NARDONE ET AL. *v.* UNDERWOOD ET AL.

[No. 159, September Term, 1958.]

---

1. The meaning of these terms is set forth in Code (1957), Art. 27, § 16.

*Decided March 18, 1959.*

The cause was argued before HENDERSON, HAMMOND,

PRESCOTT and HORNEY, JJ., and KEATING, JR., Associate Judge of the Second Judicial Circuit, specially assigned.

*J. Willard Nalls, Jr.,* for appellants.

*Vance V. Vaughan,* for appellees.

KEATING, JR., J., by special assignment, delivered the opinion of the Court.

This is an appeal by the plaintiffs below from the action of the Circuit Court for Prince George's County in granting the defendants' motion for a directed verdict at the close of all the evidence on the ground that the plaintiffs were contributorily negligent.

On November 9, 1956, at 2 P. M., the plaintiff, Mrs. Nardone, was operating an automobile owned by her husband, Wilfred E. Nardone, in a southerly direction on U. S. Route 301 approaching the intersection with Holly Lane, in Charles County, Maryland. The plaintiff, Wilfred E. Nardone, was also a passenger in the vehicle. The weather was clear and dry. At the same time, the defendant, Joseph R. Underwood, in the course of his employment, was operating an automobile owned by the defendants, James L. Dobson and Robert R. Dobson, in a westerly direction on Holly Lane approaching the intersection with Route 301. Route 301 at this point is a divided highway running generally north and south, consisting of two lanes of traffic in each direction, the northbound and southbound lanes being separated by a 30-foot grass strip. Holly Lane is a two-lane road which runs generally east and west. Both roads were hard surfaced. The intersection is not controlled by any stop signs or signaling devices, and there were no buildings or other obstructions blocking vision except a wooded section along the north side of Holly Lane 30 feet from the intersection. When the vehicles reached the intersection, a collision occurred between them.

Mrs. Nardone testified that as she approached the intersection, she was driving in the extreme right-hand lane at a speed of between 35 and 40 miles per hour, which was a lawful rate of speed. She looked first to the left and then to the

right, saw no traffic approaching, and proceeded across the intersection. While in the intersection, she was struck by the defendants' vehicle approaching from her left. She never saw defendants' vehicle. Mr. Nardone, who was also riding in the front seat as they approached the intersection, looked to the left and to the right and did not observe any traffic approaching on Holly Lane. The force of the collision turned the plaintiffs' vehicle ninety degrees to the right of the direction in which it was formerly heading and knocked it off the road, head-first into a ditch which ran parallel to Route 301. It came to rest, heading in a westerly direction, in a position south of the intersection and completely off the paved portion, on the right or westerly side of Route 301.

Once past the wooded section on the north side of Holly Lane, Mr. Underwood could see for a distance of half a mile to his right, northward along Route 301. During the trial, there was a conflict of testimony in that Mr. Nardone testified that immediately following the accident he heard Mr. Underwood tell the police officer, who came to investigate the accident, that he (Mr. Underwood) had not stopped before entering the intersection; whereas, Mr. Underwood testified that he told the police officer that he had stopped before entering the intersection, and had pulled out because he did not see any traffic approaching in either direction. Mr. Underwood further testified that he stopped before entering the northbound lane of Route 301, looked to his left, saw no traffic approaching and proceeded half-way across Route 301 and then stopped again before entering the southbound lane. Again he looked to his right and saw no traffic approaching, and then pulled forward to cross the southbound lane and collided with the plaintiffs' vehicle. He also further testified that he did not see the plaintiffs' vehicle until after the collision.

At the close of the defendants' case, the defendants refiled their motion for a directed verdict. The trial court was of the opinion that Mrs. Nardone, by failing to see what was obviously there, had thereby contributed to her own injuries; that she had a duty to keep a proper lookout; and that her negligence was imputed to Mr. Nardone, who was a passen-

ger. The court thereupon granted the defendants' motion for a directed verdict. With this conclusion we cannot agree.

It will be noted that the plaintiffs were traveling on what is sometimes described as a dual lane boulevard, but there were no stop signs or signaling devices at the particular intersection. The record fails to disclose the reason for their absence and also fails to disclose whether or not there were stop signs or signals at other points where crossroads intersect Route 301.

Code (1951), Art. 66½, § 196, which was in effect at the time of the accident, provided that: "Except as hereinafter provided, all vehicles * * * shall have the right of way over other vehicles * * * approaching at intersecting public roads from the left, and shall give right of way to those approaching from the right."

The exceptions referred to apply to vehicles entering through highways (designated as such by stop signs) from other roads and vehicles entering paved highways from unpaved or private roads or alleys. Such exceptions have no application to the instant case. We must, therefore, apply the rule which requires yielding the right of way to the motorist approaching from the right pursuant to the provisions of § 196, *supra*.

The testimony shows that both automobiles arrived at the intersection in the southbound lane of Route 301 simultaneously under lawful and careful operation, except that each driver failed to see the other vehicle. There was no testimony touching upon the physical condition of the drivers with respect to their eyesight. In the absence thereof we must assume they had normal vision, but wonder at the cause of blindness so sudden, simultaneous and shortlived. Nevertheless it is sufficient to say that apparently neither driver saw his or her peril until the instant of impact. It was then too late to avoid it.

Under the applicable statute and similar facts, this Court has previously held that the driver on the right has presumptive precedence, *Rabinovitz v. Kilner*, 206 Md. 455, and that he was not necessarily guilty of contributory negligence as

a matter of law by failing to see the other driver approaching from the left. *Valcourt v. Ross,* 201 Md. 17.

If we should assume, without deciding, that the failure of both plaintiffs to see defendants' vehicle was negligence, there is not sufficient evidence to show conclusively that such negligence was the proximate cause or a contributing cause of the injury, because, even if both Mr. and Mrs. Nardone had seen the defendants' vehicle approaching from the left, or standing at the left of the intersection, they would have been justified in assuming that he would yield to them the right of way. Cf. *Katzel v. Clark,* 215 Md. 54; *Schwartz v. Price,* 215 Md. 43; and *Rabinovitz v. Kilner, supra.*

This case differs from most of the other cases in point only in that here neither driver saw the other before the impact, so that there was no interval at all within which to act either reasonably or unreasonably.

We are, therefore, of the opinion that the record does not show facts from which the trial court could properly find, as a matter of law, that either of the plaintiffs was guilty of negligence directly contributing to the accident. We think the case should have been submitted to the jury.

> *Judgment reversed and case remanded for new trial, the appellees to pay the costs.*