GHIRADELLO *v.* MALINA ET AL.

[No. 269, September Term, 1964.]

*Decided April 30, 1965.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, SYBERT and BARNES, JJ.

*Gerald H. Cooper,* with whom was *Leon Hoffman* on the brief, for the appellant.

*Kenneth R. Hammer* for the appellees.

PRESCOTT, C. J., delivered the opinion of the Court.

We are, again, presented with a case involving the rights of way of the operators of two motor vehicles, arriving at an un-controlled intersection at, or about, the same time. After an

adverse jury verdict and the entry of judgment for costs against him, the plaintiff-appellant appeals.

He states his contentions as follows:

1. "Did the Court err in its instructions to the jury by:

(a) Misstating the rule of right of way?

(b) Giving instructions which had no relation to the factual situation presented by the case at bar?

2. "Did the Court err in its general charge to the jury by:

(a) Confusing the jury regarding contributory negligence?

(b) Its over-emphasis concerning the right-of-way not being absolute?

(c) Instructing the jury with qualifications of the right-of-way law that had no relevance to the facts of the case at bar?"

The testimony was not voluminous. Appellant, a 58 year old millwright, stated that on February 16, 1963, at about 6:00 p.m., he was driving his automobile in the City of Baltimore. He proceeded west on St. Helena Avenue until he arrived at Central Avenue, a one-way street south, about 17 feet wide. He "had to jump the curb [7 inches high] to make a turn" south on Central. Parking is permissible on the west side of Central, and cars were parked thereon. He proceeded south on Central in low gear (at about 8 to 10 miles per hour) until he reached an alley some 135 feet north of where the collision took place. Here he shifted into second gear and was accelerating his speed (still in second gear) until he arrived at the intersection of Central with Patapsco Avenue where the collision occurred. As he approached Patapsco, his vision to the left on Patapsco was obscured by a fence and hedge about 42 inches high (there was also a house standing near the corner). He entered the intersection where the "manhole is at * * * you got to go that far to see anything coming [from his left] on account of that hedge. * * *. You have to pass the hedge to see what's coming." (The pictures offered as exhibits show that the manhole is well out into the intersection.) When

he arrived at the intersection, his vehicle was traveling 15 to 17 miles per hour, and he was just about to shift into high gear. He said: "I told you I was going about 17 miles an hour. I was going pretty fast, that's for sure." Upon reaching the intersection, he first looked to his right, "then I looked to my left," but "it was too late—she [defendant-appellee] was on top of me already ['a couple of feet away'] and she struck me." When he saw her, he "slammed" on his brakes and stopped in a very short distance. She "sideswiped" him and brought her car to a stop some 2½ car lengths beyond. At the time of the accident, it was "just starting to get dark," and he had his "little low lights" on, which he explained were his cowl lights.

Appellant produced a Mrs. Weimer, who said she was in her home located on the northwest corner of the intersection. It was "getting dusk" at the time of the accident but it was not "dark." She saw appellant proceeding slowly south on Central and heard "the gunning of [appellee's] car motor." Appellant "had his lower lights" on, but appellee did not have "any on." She estimated appellee's speed at 30 to 35 miles an hour. The point of impact was "not quite the middle of the intersection [a little more towards the north and west of the center thereof]." The hedge referred to above runs down to and meets the sidewalk.

Appellee, a 16 year old girl, stated that she left a parking space in the block of Patapsco Avenue immediately east of Central, where she had been visiting relatives, at a time when it was dark (also she stated, "it was getting pretty dark"). She put on her headlights, started the motor, and pulled away from the curb. When she reached Central, she was still in low gear, going between 5 and 10 miles an hour. On her right was a house near the corner and a hedge, and a car was parked a short distance from the intersection on Patapsco. When she reached a point about 1½ car lengths from Central, she could see the street lights on the corner of St. Helena (the street immediately north of Patapsco) and the lights on McMahon's Bar. Arriving at Central, she looked to her right for traffic and saw none; so she proceeded into the intersection, still looking to her right. When she "got near the middle of the intersection" her passenger, another girl, yelled, "There's a car coming." Then, still

looking to her right, she, for the first time and only by the aid of the street light, observed appellant's vehicle, traveling in the left lane of Central Avenue. It was about 10 feet away and had no lights on it. His car smashed into the right side of her automobile, and she "sort of" lost control for a few seconds, but brought her car to a stop at the corner on the other side. When appellant entered the intersection, he was coming "fast," and she had already just about "entered the middle of the street." After inquiring of appellant as to whether or not he was injured, she telephoned her parents and for the police. Her testimony was corroborated in almost every detail by her passenger, a Miss Barranco.

The picture-exhibits confirm the witnesses' description of a dangerous and hazardous intersection. The streets are narrow, with houses built close to its corners, and the hedge, prominently mentioned above, certainly does not detract from the difficulties of a motorist in attempting its crossing.

From the above, it is readily seen that the testimony was conflicting. The fact that appellant was proceeding on the left side of a narrow one-way street into an extremely dangerous intersection where his view of traffic approaching from his left was obscured, and the respective claims of darkness and light, and of lights and no lights, etc., make it clear that factors are here involved which do not occur in all accident-at-intersections cases.

## I
### (a)

Appellant picks out an excerpt from the trial judge's rather lengthy and able instructions and strongly assails the same. The excerpt follows:

> "I instruct you that although a driver has the right of way, he should proceed, as I have stated, at a lawful rate of speed, keep his car under control so that he can stop on short notice, and look carefully ahead to avoid injury to any others approaching at the intersecting street, and that he is not, because of the right of way statute, which statute looks to the general welfare and safety of others as well as himself, alto-

gether relieved of the necessity of observing the condition of the road to his left with a view of ascertaining whether or not the road is clear and free of vehicles or persons approaching from that direction."

Appellant argues that this instruction was "compiled from several of the so-called 'unfavored' driver cases, that is, cases that have arisen in situations where the 'unfavored' driver has brought suit against the 'favored' driver, alleging that the right of way rule is not an absolute rule of the road * * *." Relying very heavily upon *Rabinovitz v. Kilner,* 206 Md. 455, he claims that this instruction had no application to the facts involved here, and hence amounted to no more than an abstract statement of the law, which was condemned in *Rabinovitz.* He contends that he was the "favored" driver and the instruction tended to negate completely the right of way law, Code (1957), Article 66½, Section 231, "as applied to the case at bar," and further asserts that he could not be found guilty of negligence, even if he failed to look to his left, for if he had looked and seen appellee approaching him, he would have had a right to have assumed that she would yield the right of way, citing *Nardone v. Underwood,* 219 Md. 326.

It is true that the previous decisions of this Court resolving the respective rights and obligations of motorists who had been involved in accidents at uncontrolled intersections disclose some rather complex and close factual situations; however, we do not deem it advisable to attempt to write a treatise on the subject-law (compare Chief Justice Warren's comment on the opinion in *Culombe v. Connecticut,* 367 U. S. 635), or to attempt to lay down a rule so comprehensive in nature that it will cover all of the conceivable circumstances that may attend collisions at uncontrolled intersections, or to review all of our previous decisions in great detail, for Messrs. Due and Bishop have done so down until 1950 in an able and comprehensive manner in 11 Md. L. Rev. 159, and Judge Hammond, for the Court, in *Rabinovitz, supra,* did likewise, accepting many of the conclusions reached in the law review article. For present purposes, it will suffice to mention the statutes involved, a few of this Court's previous holdings, and add, in proper places, other decisions if, and when, desirable.

The heart of appellant's contention here is Section 231, mentioned above. In substance, it provides that at all uncontrolled intersections vehicles shall have the right of way over other vehicles "approaching at intersecting public roads from the left," and shall give the right of way to those approaching from the right. Without delving into all of the niceties of the qualifications placed upon the "right of way" created by this statute by some of the decisions (compare *Warner v. Markoe*, 171 Md. 351; *Askin v. Long*, 176 Md. 545; *Bode v. Coal Co.*, 172 Md. 406; and the numerous cases cited on pp. 378, 380 of Thomsen, *A Classified Index of Motor Vehicle Cases* [3rd ed.]), this Court has held on numerous occasions that such right of way is not an absolute one. See, for examples *Creamery Co. v. Friedman*, 160 Md. 526, 530; *Jersey Ice Cream Co. v. Bach*, 161 Md. 285, 292; *Rabinovitz v. Kilner, supra*. It comes into play only when two drivers come to the crossing in such proximity in point of time as to require accommodation of one by the other. *Warner v. Markoe*, 171 Md. 351. The Court has stated that the right of way law gives "only a relative right dependent upon the circumstances of each particular case * * *." *Bush v. Mohrlein*, 191 Md. 418. It has also stated that in every case where the facts are in dispute, "it is a question of fact, whether a vehicle approaching from the right is near enough to be entitled to the right of way. * * *. There is no doubt that the cases [this Court's] hold this, as well as that the favored driver is not relieved from the duty of using reasonable care to avoid a collision. He must proceed at a lawful rate of speed, keep his car under control, and be careful to avoid injury to others. * * *. All questions of fact, such as speed, diligence of observation and the relative positions of the cars at various times are, of course, for the jury. [And, in order to recover against the driver approaching from the left] The favored driver must satisfy the jury that he was free from negligence under the tests of the cases." *Rabinovitz, supra*. In this last mentioned case, the Court held that a driver approaching an intersection from the right was entitled to have the jury instructed, in substance, of what was contained in two of his requested, but denied, prayers: one asked that if his and the defendant's vehicles "arrived at the same time at the intersection, then the appel-

lant's vehicle had the right of way and the appellee's vehicle should have yielded;" [etc.] ; the other was similar in form, but was premised upon a finding by the jury that his vehicle, approaching from the right, had entered the intersection ahead of the "unfavored" vehicle.

In regard to the significance that the first entry into the intersection has upon the statutory right of way named in Section 231, the Court has said that the statutory rule "qualifies the common-law rule giving the right of way to the first arrival at an intersection, but does not abrogate it. The width of the intersecting highways, the relative speed of the vehicles, and various other circumstances might materially affect the issue as to whether an asserted right of way should be recognized. * * *. In the case at bar plaintiff, even though he had the right of way, was not relieved from the duty to exercise reasonable care to avoid collision with an unprivileged vehicle. Although a driver privileged under the statute is entitled to assume that he will be accorded the right of way (*Jones v. Dickerson*, 184 Md. 499), he cannot continue to rely upon such assumption after he discovers that the unprivileged driver does not intend to yield the right of way. [The Court then sets forth his duty to proceed at a lawful speed, etc. and goes on to say:] If the privileged driver continues his course without exercising reasonable care for the safety of others, he may be liable notwithstanding his right of way. * * *. We specifically hold that where, in an action for damages resulting from an automobile collision at a street intersection, the evidence is conflicting, or more than one inference may be reasonably drawn therefrom, the question of contributory negligence is one of fact for the jury." *Wlodkowski v. Yerkaitis*, 190 Md. 128. These citations and the quotations therefrom will suffice for the purposes of this case. They demonstrate that the questions of fact as to which vehicle first enters the intersection, the respective positions of the vehicles as they approach it, their speeds, the manner of their operation, and possibly many other factors are significant in determining which motorist had the right of way, before the final determination of the questions of primary and contributory negligence.

The rationale of the cases cited is that the statutory right of

way created by Section 231 is not an absolute one. It affords a relative right dependent upon the attendant environment of each particular case, and springs into being only when two drivers approach an intersection in such proximity in point of time as to require accommodation of one by the other. When the facts are disputed, it is a jury question (under proper instructions from the court) whether a vehicle approaching from the right is near enough to the crossing to be entitled to the right of way. And, even though entitled to the statutory right of way, a driver is not relieved from the duty of using reasonable care to avoid a collision. He should proceed at a lawful rate of speed, keep his car under reasonable control, and be careful to avoid injury to others; and the evidence, subject to usual rules of burden of proof, must satisfy the jury that he has not been guilty of negligence under the tests of the cases. When the testimony warrants, both sides are entitled to proper instructions relative to their respective theories of the case.

Although the common-law rule of the road to the effect that a motorist who first enters an intersection is entitled to the right of way has been qualified by Section 231, it has not been completely abolished by it; hence the first entry into the intersection may be considered as one of the factors in determining which motorist has the right of way, but it, alone, is not controlling and other elements must be considered, such as the width of the intersecting highways and the relative speed of the vehicles, etc. And, although a privileged driver is entitled to assume that his right of way will be honored by an unprivileged operator, he cannot continue to rely upon the assumption after he discovers, or by the exercise of reasonable care should have discovered, that the unfavored driver does not intend to yield the right of way, and, if after such discovery or failure to exercise reasonable care to make the discovery, the privileged driver continues to pursue his course without exercising reasonable care for the safety of others, he may be held liable notwithstanding his right of way. Thus it is seen that the decisions recognize the statutory rule, but they do not interpret it as an inflexible or absolute one, and, due to the variety of circumstances that has developed, in actual practice, many times the final determination of the questions of primary and contribu-

tory negligence has had to be resolved by an application of the well-known test—what would an ordinarily careful and prudent person have done under like circumstances?

We now apply the above principles of law to the facts as developed by the evidence. The excerpts quoted above are almost a verbatim statement of part of this Court's opinion in *Wlodkowski v. Yerkaitis, supra,* which was repeated with approval in *Rabinovitz, supra;* and the small portion thereof that was not explicitly stated in the opinion in those cases was clearly stated therein by implication.

The quoted portion, we think, was peculiarly appropriate under the factual environment shown by the testimony. We have stated above that the streets were narrow, houses were built close to the corners of the intersection, and the fence and hedge, etc., made the crossing an unusually dangerous and hazardous one. The excerpt begins by assuming a driver has the right of way—plaintiff-appellant was approaching from the right; it then instructs the jury that even though privileged, such a driver should proceed at a lawful rate of speed, keep his car under control so that he can stop on short notice [1]—appellant had testified he was driving at some 17 miles per hour through this small obscured intersection, which rendered the "reasonableness" of his speed a jury question; then the jury is instructed that it was such a driver's duty to look ahead carefully to avoid injury to others approaching the intersection and even though privileged, he is not "altogether relieved of the necessity of observing the condition of the road to his left"—if this portion of the excerpt misstates the law, the statutory right of way would necessarily be an absolute one, which, as pointed out above, is not the case.

We stated that the quoted excerpt was taken from the court's rather lengthy instructions. We do not deem it necessary to set forth the oral charge in detail. It instructed the jury on the burden of proof, what constitutes negligence, contributory

---

1. See Warner v. Markoe, *supra,* where the driver approaching an intersection from the right was operating his vehicle through the intersection in the city at some 60 miles per hour. The Court refused to hold that he had the right of way.

negligence, and proximate cause, and the statutory right of way created by Section 231, etc., developing these matters both from the appellant's theory of the case as well as that of the defendant's. In addition, the court granted some seven written prayers requested by appellant, stating his theory of the case. Thus, it is seen that the jury was fully instructed upon appellant's contentions.

This fact, alone, distinguishes *Rabinovitz, supra,* strongly relied upon by appellant, from the case at bar. There, the court refused three of appellant's prayers, and instructed the jury orally. The instruction was a correct abstract statement of the law, but this Court held that, although one of the requested prayers was covered properly in the oral instructions, two were not; consequently a new trial was awarded.

The case of *Nardone v. Underwood,* 219 Md. 326, cited by appellant, is not apposite here. There, we held that under the circumstances of that case, the appellant-plaintiff's failure to see a car approaching an intersection from the left did not "necessarily" constitute contributory negligence as a matter of law; therefore the question of contributory negligence should have been submitted to the jury (as it was in the case at bar).

We hold that under the factual environment of this case and in view of the other instructions given by the court, the instructions contained in the quoted excerpt were proper.

This brings us to a consideration of the second excerpt taken by appellant from the court's instructions which he contends constituted reversible error. We shall not quote the excerpt in full. It was an instruction based upon Code (1957), Article 66½, Section 211 (a) and (e), which, in substance, states that no person shall drive a vehicle at a greater speed than is "reasonable and prudent under the conditions then existing," and the prima facie limits fixed by law shall not relieve a driver from his duty to decrease his speed when "approaching and crossing an intersection except through highways," or when special hazards exist.

The crux of appellant's argument here is that "there is absolutely no evidence that the plaintiff was driving his vehicle at a speed greater than was reasonable and prudent under the conditions then existing." We shall not unduly prolong our dis-

510

cussion of this argument. Much of what we said above is *apropos* here. The fallacy in appellant's present argument is that it assumes as a fact the very question that the jury must decide, namely, was appellant driving his vehicle at a speed greater than was *reasonable* and *prudent* under the *conditions then existing?* According to his own testimony, he could not see the situation to his left until he got past the hedge, and he was approaching this perilous intersection at an accelerating speed (he was just about to put it into high), he estimated not to be over 17 miles per hour. Without laboring the question, we think it obvious that it is one that was properly submitted to the jury for its determination.

II

(a)

This subheading gives us little difficulty. During the course of the trial judge's initial instructions he referred to the question of contributory negligence on five occasions. No error is claimed in regard to the propriety of the instructions as they were stated by the judge on three of these occasions; but on two of them he inadvertently used the word "defendant" where he should have said "plaintiff" (a fault that few of us who are lawyers always escape), and appellant now claims that this confused and misled the jury.

In addition to the three times that the words "defendant" and "plaintiff" were properly used in the court's oral instructions, the court granted *appellant's* written instruction (No. 7) relative to contributory negligence, which explicitly used the said words properly. Moreover, when appellant's counsel called the court's attention to its inadvertence at the end of its rather lengthy instructions, the trial judge, in his supplementary instructions, again correctly instructed the jury as to contributory negligence, and asked counsel, "Satisfactory, gentlemen?" The record extract discloses no reply. If we assume, without deciding, that the point was properly preserved (Maryland Rule 554 d and e; *Ridgley, Exec. v. Beatty,* 222 Md. 76, 85; *Casey v. Roman Catholic Archbishop, etc.,* 217 Md. 595), it is clear to us that the inadvertence alluded to was fully corrected by the court's subsequent instructions, and we so hold.

## (b) and (c)

We are unable to find where the questions raised in these sub-headings were properly reserved for our review. Maryland Rule 554 d and e. However, many of the arguments made under II (c) have already been discussed and answered above.

*Judgment affirmed, appellant to pay the costs.*