# PETTAWAY *v.* WASHINGTON AND McCORMICK

[No. 2, September Term, 1969.]

*Decided October 9, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SMITH, JJ.

*Lloyd A. Dreiling,* with whom was *David D. Patton* on the brief, for appellant.

*Irving B. Klitzner,* with whom were *Morton Edelstein* and *Cweiber & Edelstein* on the brief for appellee Lillian Washington and *William R. Hymes,* with whom was *Hymes, Keyes & Simmons* on the brief, for Ernest E. McCormick, other appellee.

FINAN, J., delivered the opinion of the Court.

This is another case involving the rights-of-way of the operators of two motor vehicles colliding in an uncontrolled intersection. The appeal is by a defendant Stephanie J. Pettaway (appellant) from a judgment in the amount of $10,000.00 rendered on the verdict of the jury against her and in favor of the plaintiff Lillian Washington, one of the appellees, for damages resulting from the collision. The jury also found a codefendant Ernest E. McCormick (appellee) not guilty of negligence and this judgment has also been appealed. The plaintiff was a passenger in a vehicle owned by Mary Watford, who was also a passenger, and which was being operated by the codefendant, McCormick. The other vehicle involved was owned by Edward Pettaway, husband of the appellant, and was being driven by the appellant. Edward Pettaway had been joined as a party defendant but at the conclusion of the evidence a directed verdict was given in his favor as there was no evidence of any agency between husband and wife.

The accident occurred in the intersection of Ashburton

and Mosher Streets, both public highways in Baltimore City. At the time of the accident, the intersection was uncontrolled. Ashburton was designated one way northbound; Mosher, both ways east of Ashburton, one way westward, west of it. Ashburton runs north and south; Mosher east and west. At the intersection, Ashburton is generally straight and level, while Mosher is on an upgrade as it approaches the intersection. However, there was no testimony as to the degree of grade. Mosher, east of Ashburton, is thirty-four feet wide and west of Ashburton, twenty-eight feet wide. Ashburton is twenty-four feet wide "on the lower end and thirty at the mouth." What the lower end and the mouth refer to was not explained and no diagrams were included in the record extract.

The accident took place between 11:30 P.M. and midnight on December 18, 1965. The weather was clear, dry and cold. The plaintiff was seated in the rear of the vehicle operated by McCormick and Mary Watford was seated beside him in the front. McCormick was traveling in a northerly direction on Ashburton on the right side of the street at a speed which he testified to be between 15 and 20 miles per hour. He states that as he approached the intersection he checked for moving traffic on Mosher and saw no lights of approaching vehicles and proceeded into the intersection. He testified that a truck was parked on the southeast side of Mosher, about 5 feet back from the sidewalk which formed part of the intersection. His testimony was contradictory as to whether or not the truck had any effect on his ability to observe approaching traffic on Mosher. According to his version he was practically across Mosher Street, three quarters of the way across, when he was struck by the vehicle operated by the codefendant and appellant here, Stephanie J. Pettaway. McCormick saw the Pettaway vehicle seconds before the impact and testified that at the rate of speed it was coming there was nothing he could do to avoid the accident. He observed no lights on the Pettaway vehicle. Mary Watford, seated in the front seat with McCormick

testified that because of the manner in which she was seated she could not observe the Pettaway vehicle and was unaware of the impending collision until it occurred. The plaintiff Lillian Washington, who was seated in the rear of the vehicle operated by McCormick, first testified that she had not seen anything prior to the collision, but later stated that she had seen the Pettaway vehicle when the car in which she was riding was about at the corner. However, she was not certain as to whether this was the northeast or southeast corner of the intersection.

Mrs. Pettaway was returning home after letting her mother out at her mother's home some six blocks away from the scene of the accident. Immediately before the accident she was traveling westerly on Mosher, east of its intersection with Ashburton, driving in the west bound lane of Mosher. Mrs. Pettaway claims that she came to a complete stop at the intersection, blew her horn, looked to her right and to her left down Ashburton and ascertained that nothing was coming prior to her entering the intersection. She was aware of a truck parked on Mosher Street near Ashburton but testified that it did not block her view to the south. She further testified that she first saw the McCormick vehicle when it was well into the intersection and about three feet in front of her and just prior to the collision. She gave her speed as between 5 and 10 miles per hour at the time of impact. She claims that her headlights were on. Shortly after the accident, she gave a statement to the investigating officers to the effect that immediately before the accident she had been driving west on Mosher at about 20 miles per hour, slowed down and blew her horn as she approached the intersection, observed that there was nothing in sight, and entered it.

The damage to the Pettaway vehicle was to the front. The damage to the vehicle operated by McCormick was on the right side on both doors. It also sustained damage in the rear from a parked car which it struck on the west side of Ashburton after the collision. The investi-

gating officer estimated the vehicle McCormick was driving to have been 16 to 18 feet in length and placed the point of impact at about 10 feet back from the front of the vehicle. With reference to the intersection, the officer placed the point of impact at about 17 feet south of the north curb of Mosher and 12 feet west of the east curb of Ashburton.

The appellant sets forth as grounds for this appeal that: (1) the codefendant McCormick, was as a matter of law, guilty of negligence which was a proximate cause of the accident and that the trial court erred in not granting her motion that it instruct the jury that the defendant was guilty of negligence, and (2) the trial court erred in its instructions to the jury regarding the law as to the right-of-way rule at an uncontrolled intersection. We shall discuss the issues in the order presented.

## I

The appellant's request that the court instruct the jury that the codefendant McCormick was, as a matter of law, guilty of negligence which was the proximate cause of the accident was in effect a motion for a directed verdict in favor of the plaintiff Lillian Washington and against the codefendant McCormick. The law which binds a trial judge concerning such a motion was well expressed by Judge Prescott (later Chief Judge) in the opinion of this Court, *Brown v. Ellis,* 236 Md. 487, 204 A. 2d 526 (1964):

> "It is established law that in a proper case, the trial court may, and should, direct a verdict for the plaintiff on the issue of the negligence of a defendant. *Dunnill v. Bloomberg,* 228 Md. 230; *Shriner v. Mullhausen,* 210 Md. 104. And in considering the propriety of taking the question of primary negligence from the jury and holding a defendant guilty of negligence as a matter of law, the evidence must be considered in a light most favorable to the defendant. This means, of course, that the Court must assume the truth of all credible evidence tending to

sustain the defense presented, and draw all fairly deducible inferences from that evidence favorable to the defense. Cf. *Havre de Grace Fireworks v. Howe,* 206 Md. 158; *Ragonese v. Hilferty,* 231 Md. 520." *Id.* at 491.

See also *Trionfo v. Hellman,* 250 Md. 12, 15, 241 A. 2d 554 (1968).

In the instant case resolving all conflicts in the evidence in favor of McCormick and assuming the truth of all of the evidence favoring him and the reasonable inferences which may be drawn therefrom, there were facts which a jury may legitimately have concluded to be true which would have excused him from liability.

Without entering into the realm of speculation, we think the jury may have concluded from the facts that McCormick, while approaching the intersection, looked sufficiently far to the right to discover whether there was traffic approaching from that direction within a distance of the intersection traversable by a vehicle driven at lawful speed, and finding none, proceeded through the intersection. *Ghiradello v. Malina,* 238 Md. 498, 506, 507, 209 A. 2d 564 (1965); *Rabinovitz v. Kilner,* 206 Md. 455, 463, 112 A. 2d 483 (1955); *Taxicab Co. v. Ottenritter,* 151 Md. 525, 531, 135 A. 587 (1926); *Cyclopedia of Automobile Law and Practice,* Blashfield, Vol. 2, § 1037, p. 353, citing *Taxicab Co. v. Ottenritter, supra.*

This possible finding of fact by the jury, without more, convinces us that it would have been error for the lower court to have taken the case away from the jury regarding the codefendant McCormick, and to have instructed them that he was guilty of negligence as a matter of law.

As was stated by this Court in *Ottenritter,* "* * * It was the province of the jury who heard and saw the witnesses to determine how far his statement was worthy of belief. The Court would not be justified in disposing of this case on the assumption that this particular testimony was incredible." *Id.* at 529; and again in *Ghiradello, supra,* p. 505, wherein we quoted *Bush v. Mohrlein,* 191 Md. 418, 62 A. 2d 301 (1948), to the effect that

"All questions of fact, such as speed, diligence of observation and the relative positions of the cars are, of course, for the jury."

II

The appellant took exception to the following jury instruction by the lower court on the premise that it was oriented towards and expressed in terms pertaining to the first arrival at the intersection at the expense of proper emphasis on the rights given to the driver of the vehicle approaching from the right under Maryland Code (Repl. Vol. 1967), Art. 66½, § 231 (a) : [1]

> "* * * Ordinarily, under the law, the man on the right has the right of way. That does not mean an absolute right. It is a qualified right. It is qualified in that a man who has the right of way still has to use due care and what I mean by that is when you come to the street intersection, it does not mean that a man who is on the right of another vehicle can deliberately drive into the intersection without looking, that

---

1. Code, Art. 66½, § 231
    "(a) In general.—Except as hereinafter provided, all vehicles or trackless trolleys shall have the right-of-way over other vehicles or trackless trolleys approaching at intersecting public roads from the left, and shall give right-of-way to those approaching from the right."
The following is a very pertinent observation concerning the statute which was made by this Court in *Taxicab Co. v. Ottenritter*, 151 Md. 525 (1926):
    "* * * The statute [Code, Art 66½, § 231 (a) was then Code, Art. 56, § 209] does not specify how near a vehicle approaching from the right must be to the point of intersection in order to be entitled to the right of way with respect to a vehicle approaching from the left, nor what must be the proximity of the latter to the point of possible collision in order that the approach of one coming at a greater distance from the right may be disregarded. It would be difficult to prescribe such limitations upon the rule in view of the diversity of the conditions to which it must be applied. Certainly, the court would not be justified in regulating the enforcement of the rule according to specific measure of distance which the Legislature has not found it expedient to adopt. The question of whether a vehicle approaching from the right is sufficiently near the street or road intersection to have the right of way over a vehicle approaching from the left necessarily depends in each case upon its own facts." *Id.* at 531, 532.

he can drive into it at a high rate of speed, if it is the place where that would be carelessness, or he can drive into it without regard to anybody else's position in the intersection. It is a qualified right and it means if both parties get there at the same time, the man who is on the right, on the right side has a right to go ahead carefully and the other man must give him the right of way. This rule, the right-of-way rule, does not completely nullify the common law rule, that the driver free of negligence in the operation of his vehicle who reaches the intersection first is entitled to the right of way. The first entry into the intersection may be considered as one of the factors in determining which motorist has the right of way but it alone is not controlling and all elements in the case must be considered by you."

This Court has often stated the principles of law that the right-of-way created by Art. 66½, § 231 (a) is not an absolute right but a qualified one, and the appellant does not quarrel with this proposition. See *Ghiradello, supra,* wherein Chief Judge Prescott reviews many decisions of this Court involving the relationship of the statute with the common law rule which gives the right-of-way to the first arrival at the intersection. Judge Hammond, now Chief Judge, in an opinion written for the Court in *Rabinovitz v. Kilner, supra,* also reviewed this same question at some length. The query we must now answer is whether the lower court's instruction encompassed the proper statement of law.

It is obvious that a pertinent part of the instruction which is here assailed was taken almost verbatim from the language of the Court in *Ghiradello* which we set forth for comparison:

"Although the common-law rule of the road to the effect that a motorist who first enters an intersection is entitled to the right of way has

been qualified by Section 231, it has not been completely abolished by it; hence the first entry into the intersection may be considered as one of the factors in determining which motorist has the right of way, but it, alone, is not controlling and other elements must be considered, *such as the width of the intersecting highways and the relative speed of the vehicles, etc. * * *"* (Emphasis supplied) *Id.* at 507.

The appellant also complains of the failure of the lower court to include in its instructions the italicized language from the quoted excerpt from *Ghiradello* ("such as the width of the intersecting highways and relative speed of the vehicle, etc."). The appellant characterized this as the court's failure to define reasonably some of the "all elements" that should be considered where vehicles approach an intersection in such proximity in point of time as to require accommodation of one driver to the other, whereby the driver on the left may be obliged to yield.

The appellant also took exception to the lower court's failure to grant her instructions Nos. 2 and 5. However, in the brief and in argument on appeal, counsel (and we think wisely so) pressed argument only concerning instruction No. 5 which reads:

"When two drivers come to the crossing in such proximity in point of time as to require accommodation of one to the other, then the right-of-way rule applies, and the driver from the left is obliged to yield."

We readily agree that it would have been proper for the lower court to have given the requested instruction, just as it would have been proper to have made amplification on the term "all elements," as used in the instruction. However, reviewing the instruction in its entirety, we think it adequately, and without imbalance toward the statute or the common-law rule, expressed the law governing the right-of-way at uncontrolled intersections. In *Rabinovitz, supra,* we said: "We recog-

nize the very salutary principles established by the cases that the charge of the trial court must be considered as a whole and that the judge is not to be put in a strait jacket, but must be given latitude in instructing the jury. * * *." *Id.* at 464.

We are further satisfied that the failure to give the requested instruction was not prejudicial to the appellant's case. In *Aleshire v. State,* 225 Md. 355, 370, 170 A. 2d 758, 765 (1961), we said:

> "Requested written instructions, even though they be correct expositions of the law, need not be granted, provided 'the matter is fairly covered by instructions actually given; * * *.' Maryland Rule 554 b 1."

*Judgment affirmed, appellant to pay costs.*