ERNEST JAMES BURNS ET AL. *v.* HOWARD
WILLIAM GOYNES ET UX.

[No. 605, September Term, 1971.]

*Decided April 27, 1972.*

294

The cause was argued before MORTON, ORTH and POWERS, JJ.

*Christopher A. Hansen,* with whom was *Jesse Slingluff* on the brief, for appellants.

*John J. Hirsch,* with whom was *Paul L. Wilkins* on the brief, for appellees.

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, September 12, 1972.

ORTH, J., delivered the opinion of the Court.

As the result of an accident involving an automobile owned and operated by Howard William Goynes and a mail truck owned by Royce Dean Blackburn and operated by his employee Ernest James Burns, two cases in one declaration were filed at law in the Circuit Court for Anne Arundel County. Goynes individually sued Burns and Blackburn claiming $60,000 for personal injuries and property damage, and with his wife, Agnes, sued them for loss of consortium, claiming $25,000. The cases went to trial before a jury on a general issue plea. At the close of all the evidence the defendants moved for a directed verdict in their favor as to each case, Maryland Rule 552 a, and the motions were denied. The plaintiffs moved for directed verdicts in their favor and the trial court reserved its decisions thereon. Rule 552 c. On 9 September 1971 the jury found for the defendants and judgment nisi was entered for them against the plaintiffs for costs. On 14 September the plaintiffs filed a motion for judgment N.O.V. or in the alternative a new trial.[1] Rule 563 a 1 and 3. On 1 October the motion was heard. The court said it felt "it erred in not directing the matter of liability in favor of the plaintiff * * *. For that reason, the motion for a new trial will be granted." Counsel for the plaintiffs asked the court "if the Motion for Directed Verdict which you have reserved upon has been granted and whether the new trial is for damages only?" The court replied that the new trial will be for damages only. Counsel for the defendants inquired: "Now, Your Honor,

---

1. The action of the lower court in reserving decision on plaintiffs' motion for a directed verdict and submitting the case to the jury in itself operated as a motion for judgment N.O.V. Rule 563 a 2. In any event, both the motion for judgment N.O.V. and the motion for a new trial were timely filed. Each were required to be filed within 3 days after the reception of the verdict. Rule 563 a 1 and 567 a. In computing the period of time, the day of the event after which the designated period of time begins to run is not to be included and when the time allowed is seven days or less, intermediate Sundays, Saturdays and legal holidays shall not be counted. Rule 8. 9 September 1971 was a Thursday so 14 September was the third day after the reception of the verdict for the filing of the motions.

you now are directing a verdict for the plaintiffs in this case—is that—my understanding?" The court said: "Yes, Right." The ultimate result was as shown by the hearing sheet signed by the trial judge as of 29 October and reflected in the docket entries under that date: "Judgment N.O.V. entered in favor of plaintiffs as of October 1, 1971. New trial awarded as to damages only."[2] Burns and Blackburn appealed. The question is whether the lower court erred in granting a judgment N.O.V. in favor of Goynes, et ux, and awarding a new trial as to damages only.[3]

I

There was evidence by stipulation that the accident occurred on 12 February 1968 about 3:56 o'clock in the morning on Maryland Route 2 about 1000 feet south of Norfolk Road and involved an automobile driven by Goynes and a truck owned by Blackburn and driven by Burns as his agent and employee. There was evidence adduced by testimony of Goynes, Burns and Blackburn that Goynes was employed by the Baltimore City Department of Education as a maintenance man on the night shift. He was driving his 1964 Rambler to work when the accident occurred. Blackburn was a contract mail carrier with the U.S. Post Office. He furnished trucks and drivers to carry mail and had employed Burns about 4 or 5 years as such a driver. Burns drove "the Annapolis run" six days a week, leaving the U.S. post

2. The docket entries of 1 October 1971 read that the court "granted motion for new trial as to damages, only, after ruling on directed verdict in favor of the Plaintiffs." They were corrected upon motion by the defendants suggesting the application of Rule 563 a 2. See *Morris v. Williams*, 258 Md. 625, 627.

3. Burns and Blackburn, appellants-defendants, present the question thusly: "Was there legally sufficient evidence to show that the accident occurred without negligence of either of the defendants contributing thereto? The trial court in granting the plaintiffs' motion for judgment N.O.V. answered this question in the negative."

Goynes, et ux, appellees-plaintiffs, pose the question: "Was there legally sufficient evidence to show that negligence of the defendants was the proximate cause of the damages sustained by the plaintiff."

office terminal in Baltimore and stopping at Glen Burnie, Pasadena, Severna Park and Annapolis and on the return trip he would make additional stops for mail for the main post office in Baltimore. On 12 February 1968 Burns was driving the 2:20 a.m. shift. His vehicle was a 1966 G.M.C. ton and a half truck, van type body.

Goynes' version of the accident was in substance that on his way to Baltimore from his home in Annapolis he was driving about 45 or 50 miles per hour in the right lane of Route 2. At about Mountain Road he saw in his rear view mirror the lights of a vehicle which he thought was a heavy duty truck in the slow lane about 200 yards behind him. "I don't try to outrun them so I kept my speed." The truck approached—"he was closing the gap in there too fast and I knew he was going over the limit." The truck came up to within 7 or 8 feet of the rear of Goynes' car and Goynes pulled over so his right wheels were on the shoulder of the road. The vehicles remained in this relative position for a distance estimated by Goynes as about 50 yards and for a time thought by him to be 4, 5 or 6 seconds. Then the impact occurred at the bottom of a hill. The truck's right front wheel "come over top of my bumper and over top the fender and over top [my left rear] wheel." Goynes' car was spun completely around, hit 4 guard rails and came to rest facing Annapolis "not quite" on the right side of the road. The truck stopped in the median strip "about a hundred feet up." On cross-examination Goynes said he "wouldn't know" whether the truck was in the process of passing his car at the time of the accident. "I know he hit me. Maybe he was trying to pass but I couldn't say—and he did hit—hit me and then he went on past me."

Burns' version of the incident was that he was traveling in the right lane about 50 miles an hour in a 55 mile per hour zone just north of Mountain Road. "When you meet Mountain Road you go up about a mile, a mile and a half and the road curves down, goes down in like a dip like in the road. * * * When this accident

happened I come over the top of the hill and Mr. Goynes he was down—almost down to the foot of the hill and there was some cars coming on * * * the left hand side of me and as they passed I started to pass by Mr. Goynes over there—I didn't get past him—to the—you know, to the left lane." Burns said two cars passed him in the left lane and "as I said before and I'll repeat it, as I went to go past the man the kingpin snapped." [4] He explained: "When I goes to pass * * * Mr. Goynes I hear a snapping noise, from then on that was it. * * * The truck veered, it hit the other man's car right when it snapped it throwed me up on the other man's car." When he heard the snap he lost a wheel. He had both hands on the wheel when he heard the snap and kept both hands on the wheel thereafter. Prior to the accident "there wasn't anything wrong with the steering * * * because it steered alright." After the accident "I didn't see nothing but a wheel laying under that leaning truck. * * * It was laying underneath the truck with the tie rod still hooked to it—underneath—up next to the gas tank—about middle ways of the truck." On cross-examination he said "when the kingpin snapped in the truck it throwed it up. * * * After the kingpin snapped it throwed it up, then the truck dropped." He denied he heard the snapping at the same time the collision occurred. "All I can tell you is that I told you once before. When this snapping noise, that was first, and then when it popped it throwed it up and then it fell, the truck fell and the wheel went out underneath of it and it went up the road." He claimed he was traveling about a car and a half length back of Goynes' car. He said he was traveling that distance behind the car because of the two cars on the left hand side—"I started to pass the man when the cars passed me." He did not know how long he had been traveling

---

4. Burns had said a short time before that as he started to pass Goynes there was "a popping noise—the kingpin busted." Goynes' counsel objected and moved "that be stricken" and the court said: "Alright. Strike it out." When he later repeated that the kingpin snapped there was objection but the objection was not ruled on and the testimony stayed in.

that close to the car in front. He was asked: "You didn't feel that it was necessary to allow some space to get in between you and the rear of Mr. Goynes' car before you attempted [to pass]", and he replied: "I didn't think anything would happen." Pressed further he reiterated: "Like I—as I say, his car was low, I didn't run up on him, and I was starting to hit when this—when the kingpin snapped and this wheel—it throwed it and the car hit and my truck fell. * * * That's what I say * * * to you awhile ago."

Blackburn testified he saw his truck in the median strip shortly after the accident. The right wheel was off and was underneath the truck about where the driver would sit. It was not attached to the axle but it was attached to the tie rod. The mileage on the truck was under 25,000 miles. He had the truck towed to his garage. About 8:00 o'clock the same morning he had his mechanic, Thomas Bosley, jack up the truck to see the extent of the damage. "We saw that we had lost a kingpin and a right wheel and a brake hose had been cut in two * * *." The kingpin was about an inch and an eighth in diameter and six inches long made of "solid steel." The kingpin was broken in half. He testified that the kingpins on the truck were periodically checked to see if they should be replaced. "If there's any break in the kingpins —when a kingpin is extremely bad, the wheel will do this [indicating it wobbles] going down the road, which will wear the tire uneven. * * * If the kingpin is not too bad to show wear on the tire, you'll get it when the truck is jacked up by movement of the tire from the top portion to the bottom portion. Place your hand on the tire, if it's worn on the bottom you change it. If there's any looseness you know the kingpins are worn. The average life of kingpins are around one hundred thousand miles." The described procedures were a regular part of his truck maintenance program.

Thomas Bosley testified that he serviced the truck during the first week of February 1968. The servicing in-

cluded checking "the front end to see if there was any play in it or anything like that." He checked all the wheels. He found nothing wrong with the kingpin of the right front wheel. Also he had driven the truck in question the day before the accident on the 7:00 p.m. shift of the Annapolis run and it was in good condition. "It was operating properly * * * if there had been anything the matter with it I would have done something about it." It appeared that the truck had not been driven thereafter until Burns drove it. Bosley also testified that the truck was equipped with a governor that limited the maximum speed to 58 miles per hour. He also described and exhibited to the jury a spindle and kingpin assembly similar to one on the truck in question. He said he had inspected the truck the morning of the accident and corroborated Blackburn's observations. He disconnected the tie rod from the wheel of the truck. "The bottom part of the kingpin was in the spindle and the other part of the kingpin was in the axle of the truck." The kingpin was broken in two in the portion which was within the spindle. He was asked what the effect would be of the kingpin for the right front wheel breaking as the truck was driving down the road. He answered:

> "Well, it broke down here and that causes it to shut down—all the weight was on this top part and it pulled down here and pulled this up off of there and left this part—the big part of the kingpin in the axle. * * * The top one— this part of the spindle. * * * The small part was down in the bottom of the spindle. It broke there—about a quarter of an inch or a little more below this part here, and this big piece was still stuck in with the kingpin—there's a bolt goes through—under the axle—where the bolt goes through there and holds this kingpin in the axle. * * * There wasn't no way for that to get out. * * * It would throw it out. * * * I said the thing itself is one of the whole tire pulling out

and pulling the spindle and bending the spindle out and pulling it off of the top of the kingpin. * * * And that's what happened."

We gather from what he said that the wheel would come off when the kingpin broke.[5] He said the spindle was bent and that the bending was caused by the bottom part of the kingpin vibrating after breaking in two.

## II

We said in *Buchanan v. Galliher and Harless,* 11 Md. App. 83, 87-88, *cert. denied* 261 Md. 722:

"When a trial court is called upon by a motion for a directed verdict to rule upon the legal sufficiency of the evidence to require submission of any issue to a jury, the court must assume the truth of all credible evidence on that issue and of all inferences fairly deducible therefrom, and consider them in the light most favorable to the party against whom the motion is made, and if such evidence and inferences lead to conclusions from which reasonable minds could not differ, then the issue is one of law for the court and not one of fact for the jury.

This rule applies with equal force, whether the motion is made by a plaintiff or by a defendant; whether the moving party or the opposing party has the burden of proving the issue; and whether the motion goes to the opposing party's whole case, or is partial, or is a request for a peremptory instruction on the issue."

The trial court is governed by the same considerations in determining a motion for a judgment N.O.V. *Miller v. Michalek,* 13 Md. App. 16, 17, citing *Wheeler v. Katzoff,* 242 Md. 431, 435.

---

5. As it seems that this testimony was given while referring to a spindle and kingpin assembly actually exhibited to the jury, it would have been more comprehensible to the court and jury than is apparent from the bare record.

In the instant case, resolving all conflicts in the evidence in favor of Burns and Blackburn, and assuming the truth of all of the evidence favoring them, and the reasonable inferences which may be drawn therefrom, there were facts which a jury might legitimately have concluded to be true which would have excused them from liability. Without entering into the realm of speculation, we think the jury may have concluded from the facts that the kingpin of the right front wheel of the truck broke as Burns pulled out to pass Goynes' car, throwing the truck onto the rear of the car, and that it was this mechanical failure, not chargeable to Burns and Blackburn, rather than any negligent act or omission on the part of either appellant, which was the proximate cause of the accident. As to the question whether Burns was following Goynes too closely, the Court of Appeals in *Rabinovitz v. Kilner,* 206 Md. 455, 464, said: "All questions of fact, such as speed, diligence of observation and the relative position of the cars at various times are, of course, for the jury." See *Pettaway v. Washington,* 255 Md. 202, 207-208 and *Ghiradello v. Malina,* 238 Md. 498, 505, quoting this language. And see *Brehm v. Lorenz,* 206 Md. 500, 509 and *Mitchell v. Dowdy,* 184 Md. 634, 642 concerning negligence with respect to one vehicle following in close proximity to another.

The lower court gave its reasons for granting the motion N.O.V. in favor of appellees:

"The court feels that it erred in not directing the matter of liability in favor of the plaintiff because it feels there was no evidence whatsoever that this so-called kingpin broke prior to the—the collision between the two—two vehicles. As a matter of fact, I—I am confident in my own mind that the driver of the truck was asleep when this happened. But be that as it may, the court feels that it committed an error in submitting—ah—the matter of the prior failure to the jury because there was no evidence

> that it did fail prior to the collision—popping sound could result in the bumpers hitting, and it was also testified that all the damage occurring to the truck could have occurred as a result of the collision and not having resulted in the collision."

We find no evidence sufficient to support the conclusion that Burns was asleep when the accident occurred. And we do not agree that there was "no evidence whatsoever" that the kingpin broke prior to the collision; Burns' testimony tended to show that it did break before the impact. In noting that the "popping sound" could "result in bumpers hitting" and in observing that there was testimony that "all the damage occurring to the truck could have occurred as a result of the collision and not having resulted in the collision", the lower court was not abiding by the firmly established rule that the evidence, in the correct posture of why it was being considered, namely whether or not to grant a motion N.O.V. in favor of the Goynes, must be considered, as above set out, in the light most favorable to Burns, resolving all conflicts in his favor. We cannot say that the evidence and all the inferences fairly deducible therefrom when so considered lead to conclusions from which reasonable minds could not differ. "Only in exceptional cases, where it is clear * * * that reasonable minds would not differ with regard to the facts, will the question of negligence pass from the realm of fact to that of law." *Altenburg v. Sears,* 249 Md. 298, 304. Therefore the issue of appellants' negligence was not one of law for the court but one of fact for the jury. We hold the court erred in granting the motion N.O.V. in favor of appellees. The issue was properly submitted to the jury. See *Herbert v. Klisenbauer,* 12 Md. App. 135. As the lower court did not conditionally order a new trial, we shall enter a judgment upon the original verdict. Rule 563 c 1 (2).

## III

We feel it advisable to make several observations.

### (1)

We entertain this appeal only because of the unusual circumstances existent. Normally we would dismiss it *sua sponte* because there is no final judgment, the issue of damages remaining unresolved. There was no express determination by the trial court that there was no just reason for delay and no express direction for the entry of a final judgment. Rule 605 a. See Rule 1035; Code, Art. 5, § 1; *Flores v. King,* 13 Md. App. 270; *Knight v. Tolson,* 10 Md. App. 311. The Court of Appeals has applied Rule 605 a in a series of opinions. In *Picking v. State Finance Co.,* 257 Md. 554, it discussed the purpose of the Rule, at 557:

> "The purpose of this rule * * * is to prevent piecemeal appeals as far as possible, and thereby avoid the confusion, delay and expense which would be caused by having two or more appeals in the same suit."

We determine the appeal here only because it would violate the expressed purpose of the Rule not to do so. We think it against the orderly administration of justice in the exceptional circumstances here to remand the case and have a jury impaneled to ascertain damages in the face of the jury's verdict for the defendants-appellants when we feel the case was properly submitted to the jury and would so hold on a subsequent appeal. But our action here is not to be construed as a viable exception to the principle that an appeal lies only from a final judgment or a reflection on the integrity of the previous opinions applying the Rule. It is simply that we do not believe there should be a war between the technical procedures of the law and common sense which strict adherence to the Rule would in this unique situation initiate. Cf. *Madden v. Clouser,* 262 Md. 144. But see *Wheeler v. Katzoff, supra.*

## (2)

When the lower court, feeling it had erred in not directing a verdict in favor of the plaintiffs at the trial, subsequently granted the motion N.O.V. it spoke in terms of "the matter of liability." As opinions of the Court of Appeals and this Court have stated, there is a clearly delineated distinction between "negligence" and "liability." *Peroti v. Williams,* 258 Md. 663; *Levin v. Arrabal,* 11 Md. App. 89. The Court said in *Peroti,* at 669:

> "Even if the negligence of the defendant as a matter of law exists, this conclusion alone will not authorize the granting of a directed verdict in favor of the plaintiff on the question of liability. Liability is an obligation to pay, and arises only when all essential elements of an action are established. The basic elements necessary for a cause of action in negligence are a duty or obligation which the defendant is under to protect plaintiff from injury, a failure to discharge that duty, and actual loss or injury to the plaintiff proximately resulting from that failure."

The Court concluded:

> "Direction of a verdict that liability exists is improper unless all elements, including damages, are so convincingly shown that rational minds would not differ as to their existence." [6]

As we have decided that the grant of the judgment

---

6. This does not mean, as pointed out in footnote 2, page 670 of *Peroti,* that the full amount of the damages must be agreed upon by the parties. "If negligence is established and some injury conceded, but the amount disputed, a verdict on liability may be directed, leaving for determination by the jury the amounts to be awarded."

The Court went on to observe, at 671, that even when a directed verdict is granted, the amount of recovery may be quite minimal, but reiterated that "actual damages are a prerequisite for liability in negligence cases, and nominal damages, or 'technical liability' do not exist." It then presented a caveat in note 3 at 671: "Nominal damages, however, may properly be awarded in certain classes of tort actions."

N.O.V. here was improper in any event because the question of the defendants' negligence was properly for the jury, it is unnecessary for us to decide whether it could properly have extended to liability rather than being restricted to negligence. We do not have all the evidence presented in the case before us because the parties stipulated that the record on appeal would not include a transcript of all the testimony,[7] and it is not certain from the record we have that there were conceded damages sustained by the Goynes or such evidence regarding damages as to make a direction as to liability proper. We note that in instructing the jury the court said they were not to consider the pain, suffering, mental anguish and discomfort to which Goynes would be put in the future "because there was no testimony as to that", nor could they consider the damage to his automobile "because there was no before and after value testified, so although, apparently, he had an automobile which was damaged, since there was no testimony as to the value of the car at the time of the accident as opposed to junk value [Goynes said the car was a total loss and sold as junk], you may not consider that in arriving at damage for him if you do find in his favor."

## (3)

The lower court awarded a new trial for damages only. It is well established that the action of a trial court on a motion for a new trial is not reviewable on appeal, at least when the trial court fairly exercised its discretion. *Murphy v. Board of County Commissioners,* 13 Md. App. 497, 513 and cases therein cited. However, in the unique circumstances here existent, the grant of a new trial and the grant of the motion N.O.V. were indiscerptible. We have found the grant of the motion N.O.V. was er-

---

7. It was stipulated that the record "will include only stipulations, the testimony of Howard William Goynes, plaintiff; Ernest James Burns and Royce Dean Blackburn, defendants; Thomas Bosley, and the court's rulings, instructions, exceptions by counsel, and the ruling on the motion for Judgment N.O.V. or in the Alternative a New Trial." See Rule 1026 c 2.

ror. Therefore, it follows necessarily that the grant of the new trial was not fairly exercised.

## (4)

The jury were fairly instructed by the trial court so as to put the question of appellants' negligence squarely before them. Its charge included:

> "Now in this connection, the law also is that the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway. There again, it's a matter of the standards of reasonableness and prudence which is for your determination. You are instructed that it is the duty of the driver of a motor vehicle to have his automobile under control at all times, which means that he must have it under such control that it can be stopped before doing injury in any situation which is reasonably likely to arrive under the circumstances and therefore the motorist must drive in such a manner that he can bring his vehicle to a stop at a sign of danger, and if you find that the defendant in the case which you have just heard, drove his vehicle at a speed which was unreasonable and not commensurate with existing conditions, that he failed to observe in time the plaintiff's vehicle in front of him in order to decelerate sufficiently to avoid this collision, then your verdict should be for the plaintiffs. You are instructed also that if you find that this collision was caused by a combination of defendant's driver following too closely to the plaintiff's vehicle, coupled with an unforeseeable mechanical defect, that is, these two things were coincident and—ah—not necessarily one as opposed to the other, then in that case also

308

you should find for the plaintiff. You are likewise instructed that should you find that Mr. Burns was operating his truck in a careful and prudent manner under the existing road conditions and experienced a sudden and unexpected and unforeseeable mechanical failure which caused his truck to strike the vehicle of the plaintiff, and that the defendants had properly maintained and inspected the vehicle prior to the accident and found it to be in proper working order and that such mechanical failure was the sole proximate cause of the accident and injuries to the plaintiff, then you must find for the defendant. In other words, if there were proper inspection, if you find that there were proper inspection, and if you find further that a mechanical failure took place which could not be foreseen and would not ordinarily have been foreseen under the circumstances in spite of the —the inspection made, then Mr. Burns and Mr. Blackburn cannot be held responsible for the injuries and damages sustained by the plaintiffs."

*Judgment in favor of appellees reversed; grant of new trial vacated; judgment for costs below entered in favor of appellants upon the original verdict; appellees to pay costs of this appeal.*