Rachael DURHAM, Arthur Durham, Mertice Hammonds, James A. Morin, an infant, by Minnie Morin, Mother and Next Friend, and Minnie Morin

v.

UNITED STATES of America, Defendant and Third-party Plaintiff, William W. O'Rourke, individually and trading as W. W. Motors, and Robert E. Andrews, Third-party Defendants.

Civ. No. 10718.

United States District Court
D. Maryland.

July 2, 1959.

David Kimmelman, Baltimore, Md., for plaintiffs.

Leon H. A. Pierson, U. S. Atty., and William J. Evans, Asst. U. S. Atty., Baltimore, Md., for United States.

William C. Holland, Baltimore, Md., for O'Rourke and Andrews.

THOMSEN, Chief Judge.

On March 10, 1958, at about 7 p. m. an automobile southbound on Falls Road in

Baltimore City collided with a mail truck which had been coming north on Falls Road and was completing a left turn to go west on Belvedere Avenue. The passengers in the automobile have sued the United States under the Tort Claims Act, 28 U.S.C.A. § 1346(b), and the United States has brought in William W. O'Rourke, individually and trading as W. W. Motors, the owner of the automobile, and Robert E. Andrews, its driver, as third-party defendants, for contribution under the Uniform Contribution Among Tort-Feasors Act, Ann.Code of Maryland, 1957 ed., Art. 50, sec. 16 et seq. United States v. Yellow Cab Co., 340 U.S. 543, 551, 552, 71 S.Ct. 399, 95 L.Ed. 523. The entire case has been tried before the court without a jury.

## Liability

■ The driver of the mail truck was acting within the scope of his employment at the time of the accident. Andrews was test-driving the automobile with a view to its purchase by one of the plaintiffs, and one of O'Rourke's salesmen was present in the automobile. The United States and O'Rourke are responsible for the negligence of the drivers of their respective vehicles.

Approaching Belvedere Avenue from the south on Falls Road there is a downgrade of 4.66% for the last 550 ft. Approaching from the north, after ascending a steep hill several blocks north of Belvedere, there is a fairly level stretch until you reach a point 300 ft. north of Belvedere, where there is an upgrade of 1.8%, increasing to 2.40% at 250 ft., 2.80% at 200 ft., 4.14% at 150 ft., and 4.38% at 100 ft. At the intersection the grade drops to 3.2% for about 30 ft. Falls Road is 50 ft. wide from curb to curb, Belvedere 30 ft. Visibility is unimpaired for more than 500 ft. each way on Falls Road. It was dark at 7 p. m. on March 10, but the weather was clear and the streets were dry. The speed limit on Falls Road for both vehicles was 30 m. p. h.

The driver of the mail truck approached the intersection from the south on a green light, turned on his signal light for a left turn, slowed down to about 10 m. p. h. to allow two southbound cars to pass, entered the intersection, and began his left turn just as the light turned amber. He had proceeded about 35 ft. at about 10 m. p. h. and had almost completed his turn, so that the front of his truck was about 10 ft. east of the west curb line of the Falls Road, when the front half of the right side of the truck was struck by the automobile. The truck driver did not see the automobile or its lights before the impact, but heard the screech of its brakes.

Andrews had driven the automobile north on Falls Road, had turned around at the foot of the hill in Mount Washington, and had started south. He had been warned once by O'Rourke's salesman to reduce his speed. He was going about 35 m. p. h., and was about 120 ft. north of the intersection when the light turned amber. He first speeded up, going into passing gear, in an effort to cross Belvedere before the light turned red, but saw the truck starting to turn in front of him and slammed on his brakes. The brakes took hold about 34 ft. north of the north curb line of Belvedere, and continued without interruption 44 ft. to the point of impact, with a 4 ft. break-off. The impact was at 90°; the automobile was going S by W and the mail truck W by N. The automobile swung to the right, so that its left side also struck a part of the truck, and came to rest only a few feet from the point of impact. The driver of the truck was knocked out of his seat, and the truck drifted over to the southwest corner.

Art. 66½, § 232 of the Ann.Code of Md. (1957 ed.) provides:

"The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."

■ When the driver of the mail truck entered the southbound lane, the

automobile driven by Andrews was so close to the intersection as to constitute an immediate hazard, in view of the speed at which the automobile was traveling. The negligence of the driver of the mail truck in proceeding across the southbound lane under those circumstances was a proximate cause of the collision. Gudelsky v. Boone, 180 Md. 265, 23 A.2d 694; Meldrum v. Kellam Distributing Co., 211 Md. 504, 128 A.2d 400.

■ Andrews and O'Rourke contend that the automobile had the right of way, that Andrews was not negligent in failing to see the truck, and that his speed was not a proximate cause of the collision. The question whether a vehicle has the right to proceed across an intersection ahead of another vehicle depends upon the circumstances of the case. Legum v. Hough, 192 Md. 1, 5, 6, 63 A.2d 316, and cases cited. In the instant case, the traffic light had changed to amber when the automobile was 120 ft. north of the intersection. Art. 66½, § 193(b) (1) provides:

"(b) *Amber alone or 'caution' when shown following the green or 'go' signal.*

"(1) Vehicles facing the signal shall stop before entering the nearest cross-walk at the intersection, but if such stop cannot be made in safety a vehicle may be driven cautiously through the intersection."

If Andrews had been going at a proper rate of speed he could have stopped his automobile before reaching the intersection. In fact, he speeded up momentarily in an effort to "run the light", and slammed on his brakes after he belatedly saw the truck making its turn. He should have seen the truck with its turn-signal flashing long before he did.

In Nardone v. Underwood, 219 Md. 326, 149 A.2d 13, the Court of Appeals of Maryland held that even if the failure of the favored driver to see the unfavored vehicle was negligence, there was no sufficient evidence to show conclusively that such negligence was a proximate cause of the injury, because under the facts of that case, even if the favored driver had seen the unfavored vehicle approaching from the left, he would have been justified in assuming that the unfavored driver would yield the right of way. In Nardone, however, the favored driver was proceeding at a *legal* rate of speed on Route 310, a divided highway. A favored driver who drives at an *illegal* rate of speed, "in disregard of other traffic, creates a different situation, adding a difficulty and hazard which the driver cannot trust the ordinary accommodation at crossings to render safe for his passengers. Surprise and miscalculation on the part of other cars and aggravation of the results of a collision, should one occur, would be a new contribution of his, for which there should be a liability if it should cause a collision." Warner v. Markoe, 171 Md. 351, 358, 189 A. 260, 263. A favored driver may assume that an unfavored driver will not drive negligently, but will "give him the precedence to which he is entitled; and he may safely act upon this assumption until a situation is presented which, to the mind of a reasonable person, places the privileged vehicle in a position of peril. It then becomes his duty to exercise every reasonable precaution to avoid injury, even though the later arrival is negligent." Wlodkowski v. Yerkaitis, 190 Md. 128, 57 A.2d 792, quoted with approval in Rabinovitz v. Kilner, 206 Md. 455, 462, 112 A.2d 483, 487.

■ In the instant case, Andrews was proceeding at an illegal rate of speed, itself evidence of negligence, and speeded up when the light turned amber. His speed was a proximate cause of the accident. This is not a case like Sun Cab Company v. Faulkner, 163 Md. 477, 163 A. 194, when the speeding car had a green light and the other car ran through a red light; nor is it a case where the speeding car was on a boulevard, and the other car entered the boulevard, such as Monumental Motor Tours v. Becker, 165 Md. 32, 166 A. 434. But cf. Sun Cab Co. v. Hall, 199 Md. 461, 86 A.2d 914.

The negligence of each driver was a concurring proximate cause of the injuries.

## Damages

The impact was but moderately severe. Andrews, the driver of the automobile, was the only one who had a broken bone. His passengers were thrown forward against the windshield, dashboard and front seats, and the young boy, who had been sitting in the middle of the rear seat, was thrown across the front seat, which had tilted forward, and tumbled out the side door onto the street.

The plaintiffs were taken to the accident room of the Union Memorial Hospital, treated for contusions and small lacerations, and discharged to return home.

■ Mrs. Rachael Durham, 53, a machine operator, worked for a week, but thereafter was forced to remain at home for a month because of her aches and pains, particularly in her back. She first consulted a doctor after she quit work. X-rays were essentially negative, except for mild arthritic changes in her cervical spine, normal for her age. She returned to work after one month, and has worked regularly since, but she continued to receive diathermy treatments for several months. She still complains of pain in her back, although none of the doctors have found any objective symptoms. Because of her age and her attitude, I believe that her complaints are sincere, and that some of them will persist. She lost $283.36 in wages, and has medical bills of $358.00. A fair verdict for her damages is $3,000.

■ Arthur Durham, 22, her son, was unemployed at the time of the accident, and has spent several of the intervening months in jail. After receiving first aid he did not consult a doctor for two weeks. Aside from bruises and a mild sprain of his right shoulder, he had a laceration of his chin, which has left a small scar, and one upper tooth was chipped and loosened, but has not been removed. X-rays were essentially negative. I do not believe that he has any disability as a result of the accident, or that he had any considerable pain for more than a few weeks, although on the basis of his subjective complaints, without any objective findings, Dr. Maseritz testified that he has a traumatic myositis. His medical bills are $328, much too high, and he will probably have to have his tooth capped at a cost of $60. A fair verdict for his damages is $1,000.

■ Mertice Hammonds, a machine operator, had a severe bruise near her right knee, a sprained left ankle, and a laceration under her chin. She was off from work for two weeks and consulted a doctor two days after the accident. She has an abnormal prominence of one of her tibial tuberosities, not due to the accident, which may have caused the pain in her knee to persist longer than it otherwise would, but it has cleared up. She has a thickening of the tissues of her ankle, which has caused some slight tenderness and a minimal amount of disability. She also has a small scar on her chin. Her lost wages were $94.50, and her medical bills $294.50, a little high. A fair verdict for her damages is $3,000.

■ James Morin, 4, whose parents are divorced, has lived with his grandmother, Mrs. Rachael Durham, for several years. Besides his initial bruises, which cleared up promptly, he has had repeated nose bleeds, due to a slight injury to the septum, which has responded to two applications of silver nitrate. He has sporadic difficulty with his hearing, due to adenoids, and not to the accident. The headaches of which he complains are due to the natural tensions of his family situation. Moreover, he likes to take aspirin or Bufferin when his grandmother takes medicine. A fair verdict for his damages is $500.

The bills which have been incurred for repeated medical examinations of James, $305, plus $3 first aid, are much too high, and are indicative of the build-up of the case, but since James may need a few more treatments if his nose bleeds recur, I will allow damages to his mother in the amount of $308. She has assumed liability for his medical expenses.

## Conclusion

Let judgment be entered against the United States in favor of the several

plaintiffs for the amounts set out above. Let judgment be entered in favor of the United States against Andrews and O'Rourke jointly for one-half of the amounts awarded against the United States. One-half of all costs shall be paid by the United States, and one-half by Andrews and O'Rourke.