476 A.2d 204

**Carmen F. CHILCOTE et ux.**

v.

**VON DER AHE VAN LINES et al.**

**No. 78, Sept. Term, 1983.**

Court of Appeals of Maryland.

June 12, 1984.

Alfred E. Clasing, III, Baltimore (William J. Blondell, Jr., and Blondell, Cannoles & Clasing, Chartered, Baltimore, on the brief), for appellants.

Henry E. Dugan, Jr., Baltimore, filed brief amicus curiae for Md. Trial Lawyers' Ass'n, Inc.

Edward S. Digges, Jr., Robert Dale Klein and Michael T. Wharton, Baltimore, filed brief amici curiae for Motor Vehicle Mfrs. Ass'n of the U.S., Inc. and the Product Liability Advisory Counsel, Inc.; William H. Crabtree, Vice-President and Gen. Counsel, and Edward P. Good, Senior Atty., Motor Vehicle Mfrs. Ass'n of the U.S., Inc., Detroit, Mich., and Piper & Marbury, Baltimore, of counsel.

E. Dale Adkins, III, Baltimore (Anderson, Coe & King, Baltimore, on the brief), for appellees.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

RODOWSKY, Judge.

On this appeal we address a fundamental question under the Maryland version of the Uniform Contribution Among Tort-Feasors Act (the Md. Act).[1]  Three tortfeasors are

---

1. The Md. Act is Md.Code (1957, 1979 Repl.Vol.), Art. 50, §§ 16–24. Set forth below are the sections principally involved here.

§ 16.  Definitions.

For the purposes of this subtitle—

(a) *"Joint tort-feasors"* means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

(b) *"Injured person"* means any person having a claim in tort for injury to person or property.

§ 17.  Right of contribution.

(a) *Right exists.*—The right of contribution exists among joint tort-feasors.

(b) *Discharge of liability or payment of share.*—A joint tort-feasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.

(c) *When joint tort-feasor enters into settlement.*—A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement.

§ 19.  Effect of release on injured person's claim.

A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

§ 20.  Effect of release on right of contribution.

A release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another joint tort-feasor unless the release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata

involved, M, a master, M's servant, S, and a third defendant, T. The plaintiffs and T settled before trial under a pro rata release. M and S went to trial and a jury has valued the plaintiffs' claims. Under the Md. Act and the terms of T's release the total verdict is to be reduced by T's pro rata share. Is that share one-half or one-third? Our answer is one-half, as explained below.

The case arises out of a three-vehicle collision. One vehicle was owned and operated by the plaintiff, Carmen F. Chilcote (Carmen), husband of the plaintiff, Gloria May Chilcote (collectively, the Plaintiffs). Defendant, Von Der Ahe Van Lines (Van Lines), owned the second vehicle, which was being operated by Van Lines' servant, the defendant Eiber Vincent, Jr. (Vincent). The remaining defendant is Amos E. Webb, Jr. (Webb), owner and operator of the third vehicle involved. Webb settled before trial for $18,500 and received a release in which the Plaintiffs agreed that their right to recover damages from Vincent and Van Lines was thereby "reduced to the extent of the pro rata share of [Webb] of the damages of the [Plaintiffs] recoverable against [Vincent and Van Lines] should [Webb] be found jointly liable with them." The release further stated the intention of the Plaintiffs "to relieve [Webb] from any liability to make contribution to" Vincent and Van Lines. In response to special interrogatories the jury found that negligence of both Vincent and Webb proximately caused the accident, that Carmen's damages were $85,000 and that damages to the Plaintiffs' marital relationship were $25,000. The trial court reduced the verdicts by 50%, representing the pro rata share of Webb, and entered judgments against Van Lines and Vincent for $42,500 in favor of Carmen and

---

share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors.

§ 21. Indemnity.

This subtitle does not impair any right of indemnity under existing law.

for $12,500 in favor of the Plaintiffs. The Court of Special Appeals affirmed. *Chilcote v. Von Der Ahe Van Lines*, 55 Md.App. 291, 462 A.2d 536 (1983).

On the joint petition of the Plaintiffs, Van Lines and Vincent, we granted certiorari to review two issues:

"[W]hether a subsequent verdict against non-released defendants is reduced by the amount of the consideration for the joint tortfeasor release or reduced by a percentage share[; and,]

[I]f the reduction is a percentage reduction, the manner in which the percentage is calculated when one of the non-released defendants is vicariously liable only." [2]

### (I)

■ Plaintiffs' first contention is that the total of the verdicts, $110,000, should have been reduced only by the $18,500 actually paid by Webb as consideration for the pro rata release furnished to him. *Martinez v. Lopez*, 300 Md. 91, 476 A.2d 197 (1984) controls and refutes Plaintiffs' position. We there held that the effect of a release, including a pro rata release, on the injured person's claim is governed by § 19 of the Md. Act. It says that a release "reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid." No "amount" of reduction is provided in the release to Webb. A "proportion," which in this release is a pro rata share, is provided. Whether Webb's pro rata share is a half or a third, it is greater than the consideration paid for the

2. The Maryland Trial Lawyers' Association, Inc. has filed a brief as amicus curiae which principally addresses the first issue while the Motor Vehicle Manufacturers Association of the United States, Inc. and the Product Liability Advisory Council, Inc. have filed a joint brief, as amici, in support of Van Lines' position on both issues.

release.[3]  Under those circumstances, § 19 directs using the pro rata share and not the consideration paid to determine the amount of the reduction.  *See Martinez, supra* and *Swigert v. Welk*, 213 Md. 613, 619, 133 A.2d 428, 431 (1957) (illustrating in two tortfeasors-two shares context a claim of $8,000, release consideration of $3,500 and a pro rata reduction of $4,000).

The two points with which Plaintiffs support their position are not well taken.  One rests on *dicta* in *Brooks v. Daley*, 242 Md. 185, 193, 218 A.2d 184, 188 (1966).  There we commented that, if the jury had found a defendant and a third-party defendant jointly liable, the defendant "would have been entitled to a reduction in the amount of the judgment owed [the plaintiff] equal to the amount of the consideration paid by [the third-party defendant] to purchase her release."  In *Brooks* the amount of consideration paid for the release was not in the record so that no comparisons of pro rata share and consideration were made.  In the context of the *Brooks'* opinion the statement was not intended to be a definitive construction of § 19 of the Md. Act applicable to any combination of relevant facts.

*Dicta* in *Lahocki v. Contee Sand & Gravel Co.*, 41 Md.App. 579, 398 A.2d 490 (1979), *rev'd on other grounds,*

---

**3.** This conclusion is based upon comparing the position on pro rata share more favorable to the Plaintiffs, *i.e.,* that Webb's share is one-third, with the consideration paid for the release as allocated on the basis of the verdicts to the respective causes of action.  Specifically:

| | Verdict | Amount of Reduction by Pro Rata Share of One-Third | Net Judgment | Amount of Reduction by Allocated Settlement Consideration | Net Judgment |
|---|---|---|---|---|---|
| Carmen Chilcote Individually | $85,000 | $28,333.33 | $56,666.67 | $14,295.45 | $70,704.55 |
| Injury to Marital Relationship | $25,000 | $ 8,333.33 | $16,666.67 | $ 4,204.55 | $20,795.45 |

286 Md. 714, 410 A.2d 1039 (1980) is the source of Plaintiffs' second point. The Court of Special Appeals' *Lahocki*, in which there was no agency relationship between any of the tortfeasors, held that the "pro rata share" referred to in the release meant, as a matter of that contract's interpretation, a numerical share based upon the number of tortfeasors. The opinion recognized that Maryland lawyers generally accepted and used that construction but suggested that the correct statutory interpretation of "pro rata share" might be "proportionate to the consideration paid by the released tortfeasor." *Id.* at 618, 398 A.2d at 512. In our view such a "proportionate" reduction becomes simply the subtraction from the claim of the amount of consideration. If a pro rata share always equals the amount of consideration paid, the second clause of § 19 of the Md. Act becomes redundant in the overwhelming majority of cases because releases in joint tortfeasor cases ordinarily credit the releasee's pro rata share. Thus § 19 in such cases would in effect look to the greater of (1) the consideration paid, or (2) the amount provided, or (3) the consideration paid. For reasons similar to those on which we relied in deciding *Martinez*, we reject the notion that pro rata share always equals the consideration paid by the releasee. Consequently, the $18,500 paid by Webb in the instant matter is not the limit of the reduction of the Plaintiffs' verdict.[4]

---

4. The amicus brief of the Maryland Trial Lawyers' Ass'n urges the position of the plaintiffs in *Martinez*, namely that the only applicable section should be § 20 so that a pro rata share fixes the reduction effected in all cases in which a pro rata release is given. That amicus argues that § 19's provision for crediting the consideration paid, if greater than a pro rata share, particularly deters annuity settlements. In such cases the settling tortfeasor purchases for the plaintiff's benefit a stream of future payments by a present outlay equivalent to a fraction of the total of the future payments. We recognized in *Martinez* the impediments to settlement caused by the unknowns in the § 19 formula; but only the Legislature can rewrite the plain words of the statute.

## (II)

■ Alternatively Plaintiffs assert that the reduction of the verdict should be by one-third. The judgment debtors argue that the reduction by one-half was correct. Plaintiffs base their argument entirely on the Md. Act's definition of " '[j]oint tortfeasors' " as "two or more persons jointly or severally liable in tort for the same injury to person or property...." Sec. 16(a). That definition is broad enough to include a person liable solely by reason of *respondeat superior*. We agree that Van Lines falls within the § 16(a) definition. *See Associates Discount v. Hillary*, 262 Md. 570, 278 A.2d 592 (1971). However, that is not dispositive. Under the *Martinez* analysis the issue to be decided is the meaning of "pro rata share."

In *Martinez* we explained that the reduction in the plaintiff's claim called for by § 19 of the Md. Act may be in the "proportion by which the release provides ... if greater than the consideration paid." The release may provide, as does Webb's, that that "proportion" is the "pro rata share" referred to in §§ 17 and 20. Here, where either proportion contended for is greater than the consideration paid for the release, the reduction is to the extent of Webb's pro rata share. The question is whether a pro rata share is always determined by dividing the plaintiff's claim, here valued by the jury, by the number of joint tortfeasors.

Van Lines argues that, where the liability of a master to a plaintiff is entirely vicarious and arises under the doctrine of *respondeat superior* because of the negligence of a servant, the joint and several liabilities of the servant and master to the plaintiff comprise but one pro rata share among the joint tortfeasors. Defendants say that master and servant count as one share when reducing the plaintiff's claim under § 19, when determining freedom from liability to pay contribution under § 20 or when determining the right to collect contribution under § 17.

■ Comprising the Md. Act are most, but not all, of the sections of the 1939 version of the Uniform Contribution

Among Tort-Feasors Act (the 1939 Model Act). *See* 1939 Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Forty-Ninth Annual Conference 240–252. Even though the Md. Act has been in effect in substantially its present form since 1941 (Ch. 344), the question under consideration seems never squarely to have been decided by this Court. However, the history of the 1939 Model Act, court decisions, particularly those applying the Md. Act or the 1939 Model Act, the opinions of commentators and the ramifications of indemnification of a master by a servant, which § 21 of the Md. Act preserves, persuade us that, where the liability of the master is vicarious, master and servant comprise but one "pro rata share."

The first tentative draft of the 1939 Model Act contained a provision (§ 2(3)) which expressly addressed the issue presented here. That proposal read:

> In determining the pro rata shares of joint tortfeasors, a person whose act or omission constitutes a tort and any other person made liable therefor without fault on his part shall be considered as one tortfeasor.

*See Report of Committee on Uniform Act Conferring Upon Joint Tortfeasor Discharging Liability the Right of Contribution From His Joint Tortfeasors,* 1938 Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Forty-Eighth Annual Conference 390, 393. Comments to that draft advise that § 2(3) was "intended to prevent the consideration of one who is liable vicariously ... in determining the pro rata shares of the common liability." *Id.* In promulgating the 1939 Model Act, draft § 2(3) was completely omitted. *See* 1939 Handbook of the National Conference, *supra*, 240–252. We have been unable definitively to determine the reason for this difference between the first tentative draft and the official version of the 1939 Model Act. The first draft was discussed at the Sixteenth Annual Meeting of the American Law Institute held in May of 1938 where § 2(3) seems to have been described by different participants as "not ade-

quate" and as a provision which "need not even be included." *See* 15 A.L.I.Proc. 359 (1938). Serving as Reporter to the National Conference for the 1939 Model Act was Professor Charles O. Gregory of the University of Chicago School of Law. In his opinion it was "hardly conceivable that courts would ever fail to interpret ... a general statutory provision creating contribution among tortfeasors" to impose on a master liability for contribution in excess of the servant's share. Gregory, *Contribution Among Tortfeasors: A Uniform Practice*, 1938 Wis.L.Rev. 365, 375–76.[5] Under Gregory's analysis the 1939 Model Act and the

---

5. The full context of the quoted observation is as set forth below. But suppose a case arises in which *P* is injured by the concurrent negligence of *A* and *S*, the latter being a servant of *M* acting within the scope of his employment. Even if it appears that *M* was at home asleep when the accident occurred, he is still fully liable to *P* for the damage caused and hence could be called a "tortfeasor". In many states *P* could join *A*, *S* and *M* as co-defendants and recover a joint and several judgment against them. Assume that he does this and that *P* executes the judgment entirely against *A*. Would *A* then have a claim for only one-third contribution against *S* and *M* respectively, or for two-thirds against *M* alone? Or if *P* executed his judgment entirely against *M*, would he have a claim for only one third as contribution against *A* ? The answer in each case is clearly "No".

   Although *M* is a tortfeasor for many purposes due to his vicarious liability and *S* is undoubtedly a tortfeasor because of his conduct, they should obviously be treated as a single tortfeasor for the purpose of distributing the loss by contribution. Actually the two of them present together a single unit of responsibility. Whatever *M* has to pay in discharge of his liability to *P*, he may usually shift this entire loss to *S* in an action for indemnity. Indemnity in this situation is generally recognized, whether or not we are willing to concede its wisdom. Substantially, then, it appears that as between *M* and *S*, the latter is the one who is at fault and *M* is not a tortfeasor at all. We cannot conclude from this that *M* is not to be considered as a tortfeasor for purposes of contribution because *A*, if he discharges the judgment secured by *P*, may recover contribution from *M*. Although perfectly good reasons may be found for arguing that *M* should be considered as a tortfeasor in his own right, it is apparent that under our present scheme of things his chief role as a tortfeasor is to furnish financial responsibility for *S*'s tortious conduct. In other words *M* is made liable in order to be made answerable directly to *P* for *S*'s tort, although as between *M* and *S*, the latter is (to use good judicial verbiage) primarily liable and the former is secondarily liable. It is hardly conceivable that courts

Md. Act would be interpreted as if § 2(3) of the first tentative draft were expressly included, even though the text does not specify that result.

The 1939 Model Act was withdrawn by the National Conference in favor of a 1955 version (the 1955 Model Act). Section 2 of the later act in part provides that "[i]n determining the pro rata shares of tortfeasors in the entire liability ... (b) if equity requires[,] the collective liability of some as a group shall constitute a single share ...." 12 U.L.A. 87 (1975). The Commissioners' Comment to § 2 is introduced by the statement that "[t]his section in positive terms resolves several difficult questions of policy." *Id.* The portion of the Comment most relevant to § 2(b) advises that

> it invokes the rule of equity which requires class liability, including the common liability arising from vicarious relationships, to be treated as a single share. For instance the liability of a master and servant for the wrong of the servant should in fairness be treated as a single share. [*Id.*]

Other examples given in the Commissioners' Comment are "those situations involving co-owners of property, members of an unincorporated association, those engaged in a joint enterprise and the like ...." *Id.* The policy as to master and servant favored by the Commissioners would be implemented in this case by adopting the interpretation advocated by Van Lines.

The only decision of this Court applying the Md. Act in a case where both a negligent servant and his vicariously liable master were sued apparently is *O'Keefe v. Baltimore Transit Co.*, 201 Md. 345, 94 A.2d 26 (1953). The plaintiffs were passengers in a taxicab owned by M[1] and driven by

---

would ever fail to interpret in this way a general statutory provision creating contribution among tortfeasors. Nevertheless, it was thought wise to cover this generally in the proposed uniform statute [*i.e.*, § 2(3) ]. [Footnotes omitted.]

S[1] which collided with a streetcar owned by M[2] and operated by a student motorman, S[2], who was then being instructed by S[3]. After buying the release of all five defendants the streetcar company sued M[1] for 50% contribution. Judgment for 50% contribution was affirmed, without any discussion of how it was determined. Nevertheless the judgment necessarily treated the liabilities of M[1] and S[1] as one of two shares and those of M[2], S[2] and S[3] as the other share. If each tortfeasor's liability to a plaintiff created a separate pro rata share, even when master and servant liabilities are based on the same negligent act or omission, then *O'Keefe* would have involved five shares and the pro rata share of M[1] would have been 20%. If we assume that M[1] was vicariously liable for the contribution share of S[1] as well, the judgment against M[1] should have been for 40%, not 50%.

Former Chief Judge Thomsen of the United States District Court for the District of Maryland had occasion to apply the Md. Act in *Durham v. United States*, 174 F.Supp. 410 (D.Md.1959). Passengers in a vehicle which had collided with a mail truck sued the United States. It impleaded M[2], the owner of the host vehicle, and S[2], its driver, for whose negligence M[2] was held to be responsible. *Id.* at 411. Damages were awarded against the United States and a judgment for one-half of those amounts was entered on the third-party claim against M[2] and S[2].[6] Once again, the court did not directly discuss the issue presented here. Under the *per capita* theory of the Plaintiffs in the instant case *Durham* should not have held S[2] jointly liable with M[2] for 50% of the plaintiffs' judgments. Rather, the share of S[2] for purposes of paying contribution should have been

---

**6.** We intimate no opinion here on the timing of the entry of a judgment for contribution in a specific dollar amount. But *see Baltimore County v. Stitzel,* 26 Md.App. 175, 184–88, 337 A.2d 721, 727–29, *cert. denied,* 275 Md. 745 (1975).

only 25%.[7]  But, implicitly, Judge Thomsen treated master and servant as one pro rata share.

Pennsylvania is one of the states which has adopted the 1939 Model Act. *See* 42 Pa.Cons.Stat.Ann. §§ 8321 to 8327 (Purdon 1982).[8]  The definition of " 'joint tort-feasors' " in § 8322 of the Pennsylvania statute is identical to that in § 16(a) of the Md. Act. The second clause of § 8326 of the Pennsylvania Act, dealing with reduction of the plaintiff's claim, is identical to the second clause of § 19 of the Md. Act. The Supreme Court of Pennsylvania has held that master and servant are one share in computing pro rata shares under the 1939 Model Act. *See Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134 (1981). In that malpractice case the plaintiffs sued M, a hospital, S, an anesthetist, and T, a private physician. M and S settled for $25,000. The jury found M, S and T to be jointly and severally liable to the plaintiffs in the amount of $56,000. T contended that there were three pro rata shares so that the verdict was to be reduced by two-thirds. In holding that the joint tortfeasor release to M and S effected a 50% reduction, the court applied the reasoning utilized by the Superior Court of Pennsylvania in *Parker v. Rodgers,* 125 Pa.Super. 48, 52–53, 189 A. 693, 695–96 (1937).

> "[T] and [S] were the persons who committed the actual tort or wrong as distinguished from a legal tort. [M] was not present when the accident occurred, but was only liable as the master of her servant and her driver, [S]. It was not alleged nor shown that she was personally and directly guilty of any trespass or was responsible by reason of anything which she personally did or omitted to do. Her responsibility even to the plaintiff did not arise

---

7. There would be four tortfeasors, even if the plaintiffs sued only three. The driver of the mail truck should be included if shares are always per tortfeasor.

8. The other states which have adopted the 1939 Model Act in some form are Arkansas, Delaware, Hawaii, New Mexico, Rhode Island and South Dakota. *See* 12 U.L.A. 57 (1975 & Supp.1984).

from any act which was on her part morally wrong, but her liability was based on a legal principle that has become a part of the positive law of the Commonwealth that the negligence of a servant acting within the scope of his employment is imputed to the master. We agree with the learned judge of the court below that [M's] liability being purely derivative and because she and the driver are responsible to the plaintiff for one and the same act of negligence committed by the servant alone, both reason and justice require it to be held that [T] is not entitled to contribution since he has paid but one-half of the judgment." [496 Pa. at 479–80, 437 A.2d at 1141–42.]

And *see Showers v. United States,* 113 F.Supp. 350 (M.D. Pa.1953) (driver of tractor-trailer rig, owner of tractor and owner of trailer treated as one share on third-party claim for contribution); *Russell v. United States,* 113 F.Supp. 353 (M.D.Pa.1953) (same); *Pratt v. Stein,* 298 Pa.Super. 92, 444 A.2d 674 (1982) (hospital, its interns and residents treated as one share).[9]

*Sunday v. Burk,* 172 F.Supp. 722 (W.D.Ark.1959), involving an M, S and T tortfeasor combination, treated M and S as one share under the 1939 Model Act. The Court of Chancery of Delaware has held that partners constitute one share under the 1939 Model Act. *See Lutz v. Boas,* 40 Del.Ch. 130, 176 A.2d 853 (1961). The Supreme Court of New Mexico in a strict liability in tort case has treated the primarily liable manufacturer and the secondarily liable

---

**9.** Courts applying Pennsylvania law have also held relationships other than master and servant to comprise one pro rata share under the 1939 Model Act. *See Sochanski v. Sears, Roebuck & Co.,* 689 F.2d 45 (3d Cir.1982) (retailer of tire and its manufacturer, whose liability was primary, to be treated collectively as one of two shares in the event wheel manufacturer also held liable to plaintiff); *Nationwide Mutual Insurance Co. v. Philadelphia Electric Co.,* 443 F.Supp. 1140 (E.D.Pa. 1977) (where substantive law made non-negligent landowner liable to plaintiff for the negligence of independent contractor engaged by landowner, landowner and independent contractor constitute one pro rata share).

retailer as one share under the 1939 Model Act. *See Aalco Mfg. Co. v. Espanola,* 95 N.M. 66, 618 P.2d 1230 (1980).

In states which recognize a right to contribution among joint tortfeasors under a statute other than the 1939 Model Act, or as a matter of that state's common law, courts treat the active wrongdoer and the party who is vicariously or derivatively liable for the injury caused by that wrongdoer as constituting one pro rata share for contribution purposes. *See, e.g., Schnebly v. Baker,* 217 N.W.2d 708 (Iowa 1974); *Reese v. Henke,* 286 Minn. 145, 174 N.W.2d 690 (1970); *Larsen v. Minneapolis Gas Co.,* 282 Minn. 135, 163 N.W.2d 755 (1968); *Zeglen v. Minkiewicz,* 12 N.Y.2d 497, 191 N.E.2d 450, 240 N.Y.S.2d 965 (1963); *Mead v. Bloom,* 94 A.D.2d 423, 464 N.Y.S.2d 904, *appeal dismissed,* 60 N.Y.2d 926, 459 N.E.2d 192, 471 N.Y.S.2d 83 (1983); *Martindale v. Griffin,* 233 A.D. 510, 253 N.Y.S. 578 (1931), *aff'd,* 259 N.Y. 530, 182 N.E. 167 (1932).

Professor Prosser agrees. *See* W. Prosser, *Handbook of the Law of Torts* 310 (4th ed. 1971) ("[W]here the owner and driver of a car are joined as defendants, equity may require treating the two together as liable for a single share . . . ."). Plaintiffs have cited no case to the contrary and we have found none.

We pointed out in *Martinez* that the study paper by Wendell D. Allen, *Joint Tortfeasors; Contribution; Indemnity; and Procedure,* which was reprinted in the Daily Record of Monday, June 7, 1948, influenced to a considerable degree contemporaneous practical construction of the Md. Act. Mr. Allen recognized that "pro-rata share . . . means that the burden is distributed among joint tortfeasors in numerical shares or proportions based on the actual number of tortfeasors" but questioned how the "pro-rata share [would] be determined in those cases where one or more of the joint defendants are liable by operation of law or by way of imputed negligence, or by force of statute rather than upon the basis of actual negligence . . . ." Daily Record, June 7, 1948, at 4. He opined that

master and servant when respondeat superior applies will together be considered as one entity. Generally it might be said then that the pro rata shares in contribution represent the proportions based on the actual number of direct participants in independent acts of negligence resulting in the same injury to person or property. [*Id.*]

This is precisely the analysis applied in 1931 in *Martindale v. Griffin, supra* and espoused by many of the cases cited above.

■ A second rationale which Mr. Allen utilized and which *Nationwide Mutual Insurance Co. v. Philadelphia Electric Co., supra,* applied turns on the obligation of the actual wrongdoer to indemnify one whom the wrongdoer caused to become vicariously liable to the plaintiff. In the relationship between master and servant, which is the only vicarious liability relationship presented in this case, Maryland recognizes the servant's duty to indemnify. *See Pennsylvania Threshermen & Farmers' Mutual Cas. Ins. Co. v. Travelers Ins. Co.,* 233 Md. 205, 215–16, 196 A.2d 76, 81 (1963). Section 21 of the Md. Act provides that the Md. Act "does not impair any right of indemnity under existing law." Consequently, in the most basic scenario presenting the problem, that of P v. M, S and T, in which M, S and T are joint tortfeasors under § 16(a), S will always be liable among the tortfeasors, at least by way of indemnity, for so much of the common liability as is not represented by T's pro rata share. If M and S are separate pro rata shares, S's ultimate liability is 66⅔% of the plaintiff's claim. If M and S comprise a single pro rata share, S's ultimate liability is 50%. The 50–50 rule seems more fair in this State where liability among tortfeasors is not apportioned on the basis of fault. A rule which treats S, M and T as three shares when S and T have concurrently and wrongfully caused injury to P shifts ultimately to S part of the responsibility for what T has caused.

From the standpoint of a policy of encouraging settlements, we do not see how a rule that treats M and S as one share has any great effect one way or the other. In the

basic alignment of P v. M, S and T there would be two 50% shares. In the ordinary tort case in which M is insured and S is acting in the course of his employment, M's liability policy would usually cover both M and S. Thus the legal unification of M and S as one pro rata share has a counterpart in economic reality. Treating M and S as one share at least has the benefit of eliminating in the P v. M, S and T alignment any additional maneuvering designed to achieve a perceived advantage from where the 16⅔ points differential between 50% and 66⅔% might fall.[10]

■ Accordingly, we hold that the liabilities of Van Lines and Vincent to the Plaintiffs constitute one pro rata share for purposes of the reduction of the verdict in favor of the Plaintiffs.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.

COSTS TO BE PAID BY CARMEN F. CHILCOTE AND GLORIA MAY CHILCOTE.

10. *E.g.,* under a three-shares rule, after M and S have settled, does T gamble and go to trial on the theory that he pays only $1 out of every $3 of verdict when he might settle if he had to pay $1 out of every $2 of verdict? Does P refuse to settle with M and S after P has settled with T because P would be rewarded by $2 out of every $3 of verdict, when P might settle if P retains only $1 out of every $2 of verdict?