**Roslyn CLAWANS, Individually and as Co–Executrix of the Estate of Stanley Clawans, deceased, Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**Richard Adamo, Individually and as Administrator Ad Prosequendum for the heirs at law of Nicholas Adamo, Plaintiffs,**

v.

**United States of America, et al., Defendants.**

**Ethel M. Schaal, Plaintiff,**

v.

**United States of America, et al., Defendants.**

**Nos. CIV. A. 98–3053, CIV. A. 98–3312, CIV. A. 98–4568.**

United States District Court, D. New Jersey.

Nov. 23, 1999.

Steven R. Pounian, Brian J. Alexander, Kreindler & Kreindler, New York, NY, for Plaintiffs Adamo.

William W. Lanigan, Somerville, NJ, Executor of Plaintiff Estate of Schaal.

Raymond M. Tierney, Jr., Bruce L. Shapiro, Gregory B. Pasquale, Shanley & Fisher, Morristown, NJ, for Plaintiff Estate of Schaal.

David A. Sokasits, Hoboken, NJ, for plaintiff Ethel Schaal.

Wendy L. Rome, U.S. Department of Justice, Washington, D.C., Daniel J. Gibbons, Assistant U.S. Attorney, Office of the U.S. Attorney, Newark, Steve Dunn, Office of the Chief Counsel, Federal Aviation Administration, Washington, D.C., for Defendant United States of America.

Richard E. Genter, Wolk & Genter, Philadelphia, PA, for Plaintiffs Clawans.

Beth A. Hardy, Francis & O'Farrell, Morristown, NJ, for Defendant Schott.

## OPINION

WOLIN, District Judge.

These three consolidated actions arise as a result of the crash of a small private aircraft in Brandywyne, Maryland, on October 2, 1996. This matter comes before the Court on the parties' motions for a ruling as to the applicable substantive law governing this action. Specifically, the United States seeks a determination that Maryland law governs all claims asserted against it pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA") and that Maryland law also governs its cross-claims against co-defendants. The remaining defendants argue that Maryland law should also govern the state law claims between the parties. Plaintiffs argue that New Jersey law should govern all state law claims. For the reasons set forth below, this Court finds that Maryland law governs all claims asserted against the United States under the FTCA; that New Jersey law governs the state law claims between the parties on the issue of damages; and that Maryland law governs the issue of apportionment of fault and thus the cross-claims for contribution between the parties.

## BACKGROUND

On October 2, 1996, Elmer W. Schaal, Jr. was piloting a single engine Piper aircraft carrying passenger Nicholas Adamo and Stanley Clawans. The plane departed from Somerville, New Jersey, with an intended destination of Washington Executive Airport in Clinton, Maryland. (Shapiro Aff., Ex. N, ¶ 10). The purpose of the flight was for Mr. Adamo and Mr. Clawans to attend a business meeting in Maryland. (Gibbons Cert., Ex. 2). Both Mr. Adamo and Mr. Clawans as well as pilot Schaal were residents of New Jersey. (Shapiro Aff., Ex. A, ¶ 1; Ex. H, ¶ 3; Ex. N, ¶ 1). The plane was owned by Lelia Schlott, who is also a resident of New Jersey. (*Id.*, Ex. B, ¶ 8, 15).

Before reaching its intended destination, the plane crashed in Brandywyne, Maryland, killing all three occupants on board. (*Id.*, Ex. B, ¶ 14).

Thereafter, three separate wrongful death actions were filed. Despite the number of claims, there are essentially three theories of liability relating to the plane crash. First, there are claims that pilot Schaal negligently operated the aircraft by, *inter alia*, violating his air traffic control clearance and descending below his assigned altitude. Second, there are claims brought pursuant to the FTCA, that the air traffic controllers at the Washington National Terminal Radar Approach Control Facility ("TRACON") in Alexandria, Virginia, which is operated by the Federal Aviation Administration, negligently failed to notify pilot Schaal that he was approaching the airport at an altitude that was too low, and failed to relay critical audio and visual safety warnings. Finally, there are claims against owner Schott that she negligently failed to provide an airworthy aircraft.

Roslyn Clawans first filed an action for the wrongful death of Stanley Clawans against the United States and the Estate of pilot Schaal. (*Id.*, Ex. A). Schaal's executor filed a third party complaint against owner Schott and the County of Somerset[1] and a cross-claim for contribution against the United States. (*Id.*, Ex. B). The United States filed a cross-claim for contribution against the Estate of Schaal, and Schott filed cross-claims against co-defendants for contribution. (*Id.*, Ex. D, E). The County of Somerset filed cross-claims for contribution. (*Id.*, Ex. F)

Plaintiff Richard Adamo, Nicholas Adamo's father, filed a second action for the wrongful death of his son against the United States, the Estate of Schaal and Schott. (*Id.*, Ex. H). The Estate of Schaal filed a third party complaint against the County

of Somerset and cross-claims for contribution against the United States and Schott. (*Id.*, Ex. I) The United States filed a cross-claim for contribution against the Estate of Schaal and Schott filed cross-claims for contribution against all defendants. (*Id.*, Ex. J, K). The County of Somerset also filed cross-claims for contribution. (*Id.*, Ex. L)

Plaintiff Ethel Schaal filed a third action for the wrongful death of pilot Elmer Schaal, Jr., against the United States and Schott. (*Id.*, Ex. N). Schott impleaded the Estate of Schaal as a third-party defendant and asserted cross-claims for contribution. (*Id.*, Ex. O)[2]

## DISCUSSION

### 1. The Claims Under the FTCA

All three actions against the United States were brought pursuant to the FTCA. The FTCA confers exclusive jurisdiction on federal district courts for claims against the United States for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government," and further provides that such liability should be determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The phrase "law of the place" has been construed to include that state's conflict of laws principles. *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Because the alleged negligent acts of the air traffic controllers occurred in Virginia, the rights and liability of the United States are governed by the law of the State of Virginia.

Virginia follows the rule of *lex loci delicti*. *See McMillan v. McMillan*, 219 Va. 1127, 253 S.E.2d 662 (1979). Under that principle, the substantive law of the "place of the wrong" governs. *Id.* In airplane accident cases, courts following

---

1. The claims against the County of Somerset do not relate to the air crash and are not discussed at length herein.

2. By Order of Magistrate Judge Pisano dated December 8, 1998, the three actions were consolidated.

the rule of *lex loci delicti* have found that the appropriate state law is the law of the situs of the crash. *See, e.g., Thornton v. Cessna Aircraft Co.,* 886 F.2d 85 (4th Cir. 1989); *Spring v. United States,* 833 F.Supp. 575 (E.D.Va.1993). The crash here occurred in Maryland.[3]

In the motion before the Court, none of the parties dispute that Maryland law applies to all claims against the United States pursuant to the FTCA. Accordingly, this Court holds that all claims asserted against the United States under the FTCA are governed by Maryland law.

## 2. The State Law Claims

■ This Court has supplemental jurisdiction over the remaining state law claims. Accordingly, it will apply the choice of law rules of New Jersey, the forum state, to those claims. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). New Jersey has rejected the traditional rule of *lex loci delicti* in favor of the more flexible "governmental-interest" test. That test seeks to apply "the law of the state with the greatest interest in governing the specific issue in the underlying litigation." *Fu v. Fu,* 160 N.J. 108, 118, 733 A.2d 1133 (1999).

■ The first prong of the analysis requires a determination that an actual conflict exists between the laws of Maryland and New Jersey. No party has argued that a conflict exists with respect to any issues relating to standards of liability.[4] However, there is one significant difference between the laws of New Jersey and Maryland with respect to allocation of fault between joint tortfeasors, which in turn, implicates the parties' cross-claims for contribution. Additionally, there are differ-

ences between the two states' laws with respect to non-economic damages.

■ First, under the Comparative Negligence Act, New Jersey allows a trier of fact to apportion liability among joint tortfeasors based on his or her proportionate degree of fault. *N.J.S.A.* 2A: 15–5.2. The trier of fact may also consider the negligence, if any, of the plaintiff in apportioning fault. By contrast, under Maryland Law, liability among tortfeasors is apportioned on a *pro rata* basis, without regard to degree of fault of each defendant. *Md. Code Ann.* § 3–1402; *see Chilcote v. Von Der Ahe Van Lines,* 300 Md. 106, 476 A.2d 204 (1984). Maryland is also a strict contributory negligence jurisdiction and does not recognize comparative fault. *Harrison v. Montgomery County Bd. of Educ.,* 295 Md. 442, 456 A.2d 894 (Md.1983).

■ The laws of Maryland and New Jersey also diverge with respect to the type of non-economic losses recoverable by a parent for his or her adult children. Under New Jersey law, a parent can recover for the loss of companionship, guidance, advice and counsel to the extent it is "confined to its pecuniary element." *Green v. Bittner,* 85 N.J. 1, 14, 424 A.2d 210 (1980). Maryland, on the other hand, until recent amendment,[5] did not allow recovery for such losses for the death of an adult child, unless the child was receiving at least 50% of his or her support from the parent. *Md.Code Ann.,* § 3–904(e) (revised 1997); *see Carolina Freight Carriers Corp. v. Keane,* 311 Md. 335, 534 A.2d 1337 (Md.1988) (applying law prior to revision). Maryland also imposes a cap on non-economic damages; there is no such monetary cap in New Jersey. *Md.Code Ann.* § 11–108.

---

3. Even if this Court were to find that the act or omission occurred in Maryland, the site of the crash, and apply Maryland law, the result would be the same since Maryland also follows the principle of *lex loci delicti. Hauch v. Connor,* 295 Md. 120, 453 A.2d 1207 (Md. 1983).

4. Plaintiff Adamo has taken the position that there is no conflict as to the negligence standard. (Br. at 5).

5. The 1997 amendments apply prospectively to actions for wrongful death that arise after the effective date of the Act. Md. Session Law, Ch. 318, § 3. The amendments are therefore not applicable to this action.

■ Having determined that actual conflicts exist, the second step is to determine the interest that each state has with respect to the specific issues in dispute. That inquiry is substantially similar to the "most significant relationship test" adopted by the *Restatement (Second) of Conflict of Laws* (1971).[6] *See Fu v. Fu*, 160 N.J. 108, 122, 733 A.2d 1133 (1999). That analysis requires the court to "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *Gantes v. Kason Corp.*, 145 N.J. 478, 485, 679 A.2d 106 (1996).

■ Also relevant to the analysis are the competing policies of (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Fu*, 160 N.J. at 125, 733 A.2d 1133 (quoting *Restatement (Second) of Conflict of Laws* § 145(2)).

■ The Court will first consider which law is applicable to the issue of recoverability of non-economic damages. The policies underlying allowance of the type of non-economic damages were recognized by the New Jersey Supreme Court in *Green v. Bittner*, 85 N.J. 1, 424 A.2d 210 (1980), and are applicable here. As the Court explained:

> We intend . . . to give juries in wrongful death cases involving children the same ability to do justice to their parents, within the limits of existing legislation, as they now have under our cases when children lose a parent. By thus expand-

ing the permissible scope of recovery, we also hope to reduce the pressures on juries to award damages for the parents' emotional suffering, unquestionably the most substantial element of damages in these cases, but legally impermissible. 85 N.J. at 5, 424 A.2d 210. New Jersey does not impose any monetary cap on such damages.

Recognition of *Green v. Bittner* damages is also consistent with New Jersey's general interest in insuring full and fair compensation for its injured domiciliaries in tort actions, such as the three New Jersey plaintiffs who have brought suit here. *Fu*, 160 N.J. at 131, 733 A.2d 1133; *Mellk v. Sarahson*, 49 N.J. 226, 234, 229 A.2d 625 (1967) (Where New Jersey residents are involved, New Jersey's strongly declared policy favoring compensation for its domiciliaries prevails); *Dent v. Cunningham*, 786 F.2d 173, 176 (3d Cir.1986) ("New Jersey courts have long recognized a significant public interest in compensating their injured domiciliaries.") Conversely, Maryland has no interest in compensating non-domiciliaries, such as the plaintiffs here, who reside in New Jersey. *See Marinelli v. K–Mart Corp.*, 318 N.J.Super. 554, 556, 724 A.2d 806 (1999).

The interest of deterrence is also recognized as a relevant factor in choice of law decisions in tort actions. *Gantes v. Kason Corp.*, 145 N.J. 478, 489, 679 A.2d 106 (1996). New Jersey has a strong interest in preventing tortious misconduct by its domiciliaries *Mueller v. Parke Davis*, 252 N.J.Super. 347, 354, 599 A.2d 950 (App. Div.1991) (New Jersey has interest "in assuring that its domiciliaries perform their duties and obligations"). Here, two of the

---

**6.** Section 6 of the Restatement lists the following factors relevant to the choice of law analysis:

 (a) the needs of the interstate and international systems;

 (b) the relevant policies of the forum;

 (c) the relevant policies of other interested states and the relative interests of those states in the determination of this particular issue;

 (d) the protection of justified expectations;

 (e) the basic policies underlying the particular field of law;

 (f) certainty, predictability and uniformity of result; and

 (g) ease of determination and application of the law to be applied.

*Restatement (Second) of Conflict of Laws*, § 6.

three defendants from whom compensatory damages are sought, pilot Schaal and owner Schott, are New Jersey domiciliaries In addition, the claims against defendant Schott are based on negligence allegedly committed in New Jersey—failure to provide an airworthy aircraft. The fact that defendant United States is not a New Jersey resident is entitled to little, if any, weight since the claims asserted against it will be determined under Maryland law. Under these circumstances, considerations of deterrence militate in favor of applying New Jersey law.

Any interest that Maryland has in deterrence is diminished in this case because its contact with the situs of the accident was primarily fortuitous. *See Foster v. United States*, 768 F.2d 1278, 1282 (11th Cir.1985) ("in aircraft cases, the place of injury is almost always fortuitous and thus not entitled to its usual weight in the choice of laws decision"); *In Re Air Crash Disaster Near Chicago*, 644 F.2d 594, 615 (7th Cir. 1981) ("[A]ir crash disasters often present situations where the place of injury is largely fortuitous"). In addition, the location of the accident is a less significant factor here, because the claims stemming from negligence under the FTCA will be governed by the law of Maryland, the site of the crash.

Defendants point to Maryland Transportation Law, *Md.Code Ann.*, § 5–103(a), as an expression of Maryland's interest in aviation safety. While that statute may be probative if there were a conflict with respect to liability between New Jersey and Maryland, it is accorded substantially less weight where it has no relationship to the precise issue under consideration: the recoverability of non-economic damages for parents of adult children. *See Gantes*, 145 N.J. at 485, 679 A.2d 106 ("We look first to the policies that underlie the respective state statutes that are in conflict in this case.").

This Court is persuaded that New Jersey has the greatest interest in and the most significant relationship to, the issue of damages. This case involves two New Jersey businessmen who hired a New Jersey pilot to take them from an airport in New Jersey on a plane owned by a New Jersey resident to a meeting in Maryland. Hence, New Jersey has the single greatest interest in providing for the appropriate recovery for estates of New Jersey decedents. Accordingly, New Jersey law will govern the issue of non-economic damages.

 The Court next turns to the issue of apportionment of fault. As explained above, all cross-claims for contribution asserted against the United States, *i.e.*, those asserted by the Estate of Schaal and by Schott, are governed by the FTCA and hence, Maryland law. No party disputes that Maryland law applies to those claims. The issue to be decided is whether the remaining cross-claims for contribution— against the United States by the Estate of Schaal and by Schott, and between the Estate of Schaal and Schott—should be decided by Maryland law or New Jersey law.

The Court begins by considering the interest that each state has in resolving the value of the remaining cross-claims asserted in this case. *Gantes v. Kason Corp.*, 145 N.J. 478, 679 A.2d 106 (1996). The Court notes that because the issue here relates to liability, as opposed to damages, New Jersey's interest in compensating its domiciliaries does not come into play. In addition, two of the cross-claims at issue are asserted by a non-New Jersey domiciliary, the United States, for wrongs committed in Maryland. Only one of the cross-claims—that asserted by the Estate of Schaal against Schott—relates to tortious conduct in New Jersey. These factors militate against application of New Jersey law.

This Court finds that Maryland should govern the issue of apportionment of fault in this case. Our conclusion is consistent with the expression in *Md.Code Ann.*, § 5–103(a) that Maryland has an interest in "wrongs committed in flight over this State." The Court is also persuaded that the interest of all parties will be adequate-

ly protected by the application of Maryland law to the issue of apportionment of fault. Both New Jersey and Maryland adhere to principles of joint and several liability. The only difference at issue here is that Maryland allocates fault on a *pro rata basis*, while New Jersey apportions based on actual degree of fault. Under either approach, New Jersey's interest in insuring that its domiciliaries are fairly compensated is advanced and is consistent with protecting the "justified expectations" of the plaintiffs. *Fu*, 160 N.J. at 122, 733 A.2d 1133 (citing *Restatement (Second) of Conflict of Laws*, § 6).

Given that the cross-claims against the United States must be governed by Maryland law under the FTCA, the Court believes that application of Maryland law to the remaining cross-claims will result in "certainty, predictability and uniformity of result" insofar as the plaintiffs will be ensured that fault will be fully allocated between the parties. *Id.* In addition, it will result in "ease of application of law to be applied" given the number of parties and claims. *Id.* Those factors weigh in favor of application of Maryland law.

## CONCLUSION

Accordingly, the Court finds that Maryland law governs all claims under the FTCA as well as all the issue of apportionment of fault and that New Jersey law governs the issue of non-economic damages.

An appropriate Order is attached.

## *ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this 23d day of November, 1999

ORDERED that the motion of defendant United States of America to determine that Maryland law is applicable to all claims asserted by and against the United States is granted; and it is further

ORDERED that the cross-motion of defendant Estate of Elmer W. Schaal, Jr. to determine that Maryland law is applicable is granted in part and denied in part; and it is further

ORDERED that the cross-motion of plaintiff Richard Adamo to determine that New Jersey law is applicable is granted in part and denied in part.